## B. D. SIMPSON v. A. A. CHAPMAN ET AL.

1. SHERIFF'S SALE—BONA FIDE PURCHASER.—A land certificate, issued October 5, 1847, was located, the survey made December 2, 1851, and the field-notes duly returned to the land office. In January, 1853, the grantee of the certificate contracted with C to obtain patent for the land in C's name, or have the title to the land vested in C without expense. The land was in Hood county, and was levied on, August 3, 1870, under an execution from Gonzales county,

against the grantee, and sale was made of the land April 4, 1871, and the sheriff's deed placed on record. In the interval between the levy and sale C placed a tenant in possession of part of the land. June 12, 1871, the contract between the grantee and C, together with a deed carrying it out, were placed on record : *Held*, That the levy of the execution fixed the lien upon the land, and the purchaser took a good title against C, notwithstanding his possession of part of the land at the time of the sale.

2. STATUTE CONSTRUED—ASSIGNEE'S TITLE.—The act of January 29, 1840, allowing assignees of land certificates, six months after the issuance of a patent, in which to prove up and record their deeds to the certificate, applied only to the assignments of certificates made before their location.

3. SAME—SALE OF LAND CERTIFICATES.—After a certificate has been located it is merged in the land, and its transfer is governed by the law for transfer of land, as to mode of conveyance, registration, &c.

APPEAL from Hood. Tried below before the Hon. Charles Soward.

*A. J. Hood,* for appellant, cited Dunlap *v.* Wright, 11 Tex., 597; 28 Tex., 553; Ayres *v.* Duprey, 27 Tex., 606; 1 Story's Eq. Jur., 445, secs. 72, 75; Hilliard on Ven., 1, 2, 3, notes 10, 187, 199, 243, 244, 314; Hamilton *v.* Avery, 20 Tex., 635; Love *v.* Berry, 22 Tex., 377; 2 Story's Eq., 641, 959; Caldwell *v.* Fraim, 32 Tex., 327; Daniel *v.* Hill, 23 Tex., 571; Bateman *v.* Bateman, 16 Tex., 545; Glasscock *v.* Nelson, 26 Tex., 154; 2 Parsons on Cont., 660; Evans *v.* Hardeman, 15 Tex., 480; Robinson *v.* Varnell, 16 Tex., 390; Yeary *v.* Cummins, 28 Tex., 91; Smith *v.* Hampton, 13 Tex., 463.

*Ball & Roach,* and *B. F. Williams* and *Samuel H. Renick* each filed briefs for appellee.

MOORE, ASSOCIATE JUSTICE.—This is an action of trespass to try title to twelve hundred and eighty acres of land, located and surveyed December 2, 1851, by virtue of a certificate issued October 5, 1847, by the County Court of Guadalupe county, to French Smith.

Appellant Simpson, who was the plaintiff in the court below, claimed title by deed from the sheriff of Hood county, as purchaser, at a sale by said sheriff under an execution issued on a judgment in favor of the county of Gonzales against said Smith and others. This judgment, which was for the sum of two thousand dollars, was rendered in the District Court of Gonzales county on the 16th of April, 1867, execution having been first issued to Gonzales county. "No property found," an alias execution was issued to the county of Hood, which, on the 3d of August, 1870, was levied upon the land in controversy, which, however, was returned without a sale, "because," as the return of the sheriff states, "no legal newspaper was appointed in the thirteenth judicial district in which to advertise said land." On the 25th of November, 1870, execution again issued, which was returned by the sheriff on the day he received it; that it "came to hand too late for sale." February 21, 1871, another execution issued; and under this last execution the land was regularly advertised, and sold, April 4, 1871, to appellant for the sum of three hundred and five dollars. Immediately after his purchase, appellant placed the deed executed to him by the sheriff on record, and on the 24th of April, 1871, he procured from the General Land Office the patent for the land, which, however, was issued to "French Smith, his heirs and assigns," by virtue of said location and survey in 1851, as aforesaid.

Appellee Chapman, in support of his claim to the land, relied upon a deed executed to him by said Smith on the 12th day of June, 1871, in pursuance of a contract or agreement made in January, 1853, of which the following is a copy:

"Whereas I have had located, through the agency of R. H. Wynn or William Mitchell, a certificate, No. 117, for one third of a league of land, which certificate was granted to Freeman H. K. Day, deceased; and also my headright certificate for twelve hundred and eighty acres—the two mak-

ing two thousand seven hundred and fifty-six acres. Now, I do hereby agree and bind myself to have said certificates patented to Augustus A. Chapman, of the county of Monroe, State of Virginia, for his, the said Chapman's, own proper use; or, if I do not have said certificate patented to said Chapman in his own name, I do hereby agree and bind myself to have conveyed to said Chapman, in fee simple, the land patented upon said certificates, and, at least, I am to have the title to said land aforesaid fully and completely vested in said Chapman without any expense or charge upon him, said Chapman, which is for and in consideration of the judgment which was obtained by John S. Watson, of Virginia, in the Circuit Court of Giles county, Virginia, against French C. Smith & Co., and which judgment was paid by the said Augustus A. Chapman; and the conveyance of the land aforesaid to said Chapman is to be in full discharge of the sum paid by him in discharge of said judgment.

"Given under my hand and seal this 22d day of January, 1853.                    FRENCH SMITH, [L. S.]

"Witness:

  "MICHAEL ERSKINE.

  "JOHN P. ERSKINE.

"I do hereby agree to release all claims to said Smith for said sums by me paid in discharge of said judgment aforesaid, when the said Smith shall have complied with the above agreement.                    AUGUSTUS A. CHAPMAN.

"The above obligation, when complied with, will also be in full consideration of a bond executed to me some years since for two thousand acres of land lying on York creek, in the county of Guadalupe.                    A. A. CHAPMAN."

This agreement was not recorded until the 12th of June, 1871, when it, together with the deed from Smith to Chapman, mentioned above, was acknowledged by Smith before the clerk of the District Court of Hood county, and filed

with him for record, which, as has been seen, was after the purchase of the land by appellant at the sheriff's sale. There was, however, testimony tending to prove, that a tenant of Chapman was in possession of a part of the land at the date of the sale, and also of other facts and circumstances, from which it is insisted the jury may have inferred that appellant had notice of Chapman's title when he bought. The jury, therefore, under the instructions of the court, were warranted in finding that he was not an innocent purchaser. But, as there is no pretense that Chapman had possession of the land, or that the creditor had any notice, either actual or constructive, of his claim to it when the execution was levied and his lien secured, if the land was subject to such levy, the fact of notice, either actual or constructive, by appellant of Chapman's claim is immaterial. (Grace v. Wade & Mains, infra.) For, as was said in that case, reiterating, indeed, merely what had been previously decided by the court, in Blankenship v. Douglas, 26 Tex., 225, unless Chapman's title was of a character which was required to be placed upon record before the lien of the creditor was acquired, neither the creditor nor purchaser, at a sale for his benefit, can complain.

The instrument executed by Smith to appellee, is certainly a written contract or agreement relating to land, which must be recorded before it could take effect and be valid as to subsequent purchasers for valuable consideration without notice and as to creditors, (Paschal's Dig., arts. 4988, 4989, 4994,) unless the necessity of recording it until six months from the issuing of the patent is obviated by section 7 of the act of 29th of January, 1840, to detect fraudulent certificates and provide for issuing patents, which reads as follows, to wit: "Any person claiming land by virtue of an assignment made previous to the issuing of the patent by the Government on the said claim, shall have six months from the issuing of said patent to have the assignment proved up and recorded in the county where the land is situated; and any assignment

proved up and recorded, as required by law, within the said six months, shall be as valid and binding in law as if it had been proved up and recorded at the time said transfer was made."

Unquestionably, it would require no very strained construction to hold the contract of January 26, 1853, to be in effect an assignment of the French Smith certificate previous to the issuing of the patent, under which Chapman equitably claims the land upon which the certificate was located on the issuance of the patent. And, if it had been made previous to the location of the certificate, we see no reason to deny that the claimant under it would be protected in his title, both against creditors and purchasers, if proved and recorded within six months from the issuing of the patent to Smith. But to give this enactment its proper construction, and to determine the character of claims to land to which it is applicable, it is necessary for us to consider the object and purpose of the statute, of which it is a part, and also the character or class of property, whether real or personal, to which the certificate assigned, properly pertains or belongs.

As we have already said, the enactment under consideration is a part of the statute enacted to detect fraudulent certificates and provide for issuing patents to legal claimants, passed January 29, 1840, and as, in many instances, the pretended assignments were in fraud of the rights of the parties entitled to the certificates, it was provided by the sixth section of this act that in future, patents should not issue in the name of assignees, but only to the party originally entitled to the certificate. To protect assignees against the fraudulent claims to the land of the patentee or purchasers from him, the assignee was given six months from the issuing of the patent to prove up and place upon record his assignment. But the question here presents itself: Is it, the transfer or assignment of the certificate, a mere chattel until located, or a bond, obligation, or contract in writing concerning the land located by the certificate, which the registration laws

say shall be recorded before they can have effect against creditors and *bona fide* purchasers, to which this section of the statute has reference? Unquestionably, in our opinion, it is the former; otherwise, the policy and object of the registration laws would in a great degree be defeated, and the security and confidence in titles to a large amount of land, occupied, bought and sold, in many instances, for years before the issuing of a patent, would be greatly impaired.

The certificate, until located, as has been often said by this court, is personalty, (Watkins *v.* Gilkerson, 10 Tex., 340; Evans *v.* Hardeman, 15 Tex., 480,) and may be assigned and transferred by parol. But when it is located, it loses this character. It then attaches to the land, and becomes a chattel real, and can be assigned and transferred by parol no more than the land itself. Instead of being merely property of itself, it is, like a deed, the evidence of title to the land upon which it is located. And though its sale or assignment subsequent to location, if in writing, but not otherwise, may in equity be held to operate as a transfer of the land, it is the land and not the certificate which is the thing sold. The right to the certificate is an incident to and necessarily accompanies a transfer of the land. And as contracts in writing concerning land, to have effect against innocent purchasers and creditors, must be proved and recorded, so must a contract for a certificate which is to effect or pass an interest in land after its location.

If the certificate is assigned or transferred before location, the land, upon its location, vests in the owners of the certificate, and there is no property in the original grantee, to whom it issued, upon which the judgment or execution lien, can attach. Until its location, it has no locality for record, and being personalty merely, a transfer of it is not required to be recorded. But when located, if no time was given to the owner to prove and record his assignment, the patentee might, by a sale, either defraud the real owner or a subsequent purchaser. It was to prevent frauds of this character

that the section of the act in question was, in our opinion, enacted.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.