CHARLOTTE T. JONES ET AL. v. J. A. REUS ET AL.

No. 129.

1. **Evidence—Transfer of Land Certificate.**—The transfer of an unlocated land certificate may be established by circumstantial evidence. The transfer need not be in writing.

2. **Circumstantial Evidence.**—Where the transfer of a land certificate is sought to be proved by circumstantial evidence, the admission of a written statement in regard to other certificates, in which this particular one is not mentioned, can not have the effect to mislead the jury as tending to prove the owner had parted with the certificate. *Its tendency was more towards proving he had not, but its effect was to show transactions and a relation between the parties from which a transfer would spring.*

3. **Charge of the Court not in Accord with the Evidence.**—A charge which instructs the jury to find for the plaintiffs, unless they believe from the evidence that they had parted with their title, was rightfully refused, because it would have excluded the consideration of any transfer from their ancestor, under whom they claim.

4. **Evidence.**—See opinion for description of a writing which is held compatible with hypothesis that the certificate under which the land in controversy was located had passed to and been paid for by those under whom defendants claim.

5. **Charge of the Court as to Immaterial and Irrelevant Testimony, When Ground for Reversal.**—The affidavit to obtain a land certificate was objected to, as being irrelevant and immaterial. The court instructed the jury to consider the affidavit only in reference to the identity of the certificate, and not as evidence of ownership, or title to it, or the land located thereby. *Held*, it is only when apparent that immaterial or irrelevant evidence has affected the verdict, that evidence excluded or limited will afford a ground for reversal. Railway v. Mitchell, 75 Texas, 81.

6. **Evidence.**—See opinion for circumstances from which it is held a deed, although it did not in fact confer title, was not irrelevant as evidence.

7. **Same.**—The proceedings in the District Court by the Paschals, under whom defendants claim, against a county surveyor, to compel him to survey the land located by virtue of a certificate, to which the plaintiffs were not parties, is relevant as showing proprietary rights and control over the certificate, under the issue of whether or not the certificate had become the property of the Paschals before location.

8. **Same.**—See opinion for other circumstances admissible for the jury to find that the certificate had become the property of the Paschals.

ON REHEARING.

9. **Evidence Sufficient.** — A judgment of the District Court against a county surveyor in 1873, requiring him to make a survey upon land which had been filed upon in 1856, by virtue of certificate number 66, etc., with other circumstances in the record, are sufficient to support a finding of the jury that the certificate was located and survey made of the land in 1856.

APPEAL from Bexar. Tried below before Hon. W. W. KING.

*L. N. Walthall*, for appellants.—1. It was error to allow in evidence the paper headed " Statement of account between I. A. and George W. Paschal and E. Jones, made under articles of agreement dated May 18, 1848," and also the second page of said paper, purporting to be account of I. A. and George W. Paschal with E. Jones, introduced and admitted in evidence for the purpose of showing that E. Jones had parted with his title to certificate number 66. Rule 9, Sayles' Civ. Stats., 680, and authorities referred to; Lewis v. San Antonio, 7 Texas, 313; Walden v. Skinner, 101 U. S., 584; Browning v. Estes, 3 Texas, 462; Keys v. Mason, 44 Texas, 140.

2. It was error to admit in evidence paper headed " Statement of certificates owned by E. Jones and I. A. and George W. Paschal, under their contract of February 6, 1849." Said paper was immaterial and irrele-

vant, and does not refer in any way to the certificate under which the land in controversy was located.    Mann v. Mann, 14 Johns., 10.

3. It was error in not giving charge, " the papers introduced show the title to the property to be in the plaintiffs, and you will find for the plaintiffs unless you believe from the evidence that they have parted with their title." Cook v. Dennis, 61 Texas, 246; Ivey v. Williams, 78 Texas, 685; Edwards v. Barwise, 69 Texas, 84.

4. Error in allowing in evidence the certified copy of the affidavit of George W. Paschal, Jr., made November 1, 1873, that he was the owner of unlocated balance of certificate number 1, issued to Julian Diaz.

5. Error in allowing in evidence the deed from James P. Hector to John Adam Reus, because same did not convey title, and was immaterial or irrelevant to any issue in the case.

6. Error in permitting in evidence proceedings in the District Court of Bexar County in cause 4830, M. C. Paschal, administratrix, v. L. C. Navarro, because neither of plaintiffs were parties, and said testimony is irrelevant and immaterial.    Foster v. Powell, 64 Texas, 247.

*Upson & Bergstrom*, for appellees.—1. A paper which is in itself complete and competent to prove the fact in issue is admissible in evidence.

2. The paper was properly admitted in evidence, because it tended to explain another paper, made at same time between the same parties.

3. The charge was properly refused, the court having already charged that plaintiffs are entitled to recover, unless the jury believed that Enoch Jones had parted with the title to the land certificate by virtue of which the land in controversy was located, before its location.

4. No error in admitting affidavit in evidence, because same was admissible to prove identity of the land certificate.

5. No error in admitting proceedings complained of, because same is a part of the original location made October 30, 1856, on the land in controversy.

JAMES, CHIEF JUSTICE.—*Conclusions of Fact.*—1. That the land in controversy was a part of a one-half-league survey, patented November 20, 1873, to Hezekiah Bissell, assignee of Julian Diaz. That the one-half-league certificate by which this location and patent exist was an unlocated balance of a league and labor headright certificate number 66, issued to Julian Diaz, the other half having been located in 1841 or previously, and in 1841 this unlocated balance certificate was issued.

2. That in 1839 the certificate was conveyed by the administrator of Hezekiah Bissell's estate to Enoch Jones, from which we conclude that the portion of the certificate applied to this land was at that time unlocated.

3. On December 23, 1854, I. A. and G. W. Paschal conveyed to de-

fendant Reus a part of the land in controversy, amounting to 127 acres thereof, and Reus has since his purchase thereof resided upon the land in such manner as to satisfy all the requirements of ten years limitations; Enoch Jones having died in 1863.

4. On August 1, 1874, G. W. Paschal, Jr., conveyed to defendant Reus of the land in controversy 234 acres, which adjoins the above portion on the north. This deed was duly recorded, and upon its execution he took actual possession of this land, and has since occupied the same, paying taxes, in such manner as to satisfy the statutes of five and ten years limitations as to plaintiffs, except Mrs. Washington and Mrs. Adams, who were married prior to the purchase, and who represented an undivided interest of 58½ acres of the tract, assuming that they had title.

5. On January 26, 1882, the administratrix of I. A. Paschal conveyed to defendant Reus the remainder of the land in controversy, amounting to 165 acres, who recorded this deed and went into occupancy of this tract at that time, and has been thus in possession, paying taxes, ever since. The suit was filed on March 19, 1886.

6. On March 1, 1881, a patent appears to have been issued to the heirs of Jacob Chappel, which covered a part of the above 165 acres, conflicting therewith. This title was acquired by defendant Reus on June 1, 1883. Inasmuch as Reus' possession under this conveyance was not long enough to fulfill the three years statute, we conclude that it is not entitled to be considered for any purpose.

7. With respect to the 165 acres tract mentioned in the two clauses above, we see nothing that would allow the same to be adjudged to defendant by reason of the statutes of limitations.

8. There was no written transfer of the certificate or land from Enoch Jones or his heirs.

There was in evidence, however, the following circumstances, upon which the court submitted to the jury the question whether or not Enoch Jones transferred the certificate to I. A. and G. W. Paschal by parol, to-wit:

It was made to appear that Enoch Jones and the Paschals had an agreement, of date March 18, 1848, and another of date February 6, 1849, looking to the joint acquisition of land certificates.

There was in evidence a statement, of date April 28, 1855 (known in this record as exhibit A), approved by Enoch Jones and the Paschals, the object of which was to define the rights of the parties with reference to the certificates; they were admitted in evidence under the agreement of 1848. The certificates were enumerated in this statement, among them "H. R. certificate number 66, of 2302 acres, issued from Bexar County; cost $161.17; located on Juan Montes grant." This document shows the Paschals to be entitled to one-third of the enumerated certificates and Enoch Jones to two-thirds, and shows that the Paschals were

then indebted to Jones $1339.07 by reason of the agreement of 1848, the terms of which agreement are not shown. Whether the Juan Montes grant was where the land in controversy is or not, does not appear. We conclude, however, that as the original certificate had been located in 1841, long before it was shown that the Paschals had any transaction with Jones concerning the land certificates, that the 2302 acres certificate number 66 mentioned in the exhibit A was the unlocated balance.

The various certificates set forth in exhibit A aggregate 32,943 acres, and in the column under the head of general remarks Enoch Jones' name is written on the line with four certificates, thus, "E. Jones, October 1, 1857." The aggregate of these four certificates is 8001 acres. On a line with another certificate of 2391 acres there appears written in said general remarks column, "E. Jones to Edwards, January 23, 1851." In the same column 14,133 acres appear generally as sold. There is nothing in the column showing disposition of the remaining 8418 acres.

The other statement, known in this record as exhibit B, was made the same day, and has reference to the agreement of 1849, and enumerates certificates owned by the parties thereunder, and defines their respective interests. This makes no reference to the Julian Diaz certificate at all.

It appears that the Paschals assumed to exercise control of the land by selling a part thereof to defendant Reus in 1854, as aforesaid, by applying to the surveyor of Bexar County for a survey of the certificate in 1856. That Enoch Jones died in August, 1863, and that neither the certificate nor the land located thereby went upon the inventory of his estate, and that the land appears upon the inventory of the estate of I. A. Paschal, whose death occurred prior to November 14, 1873, the date not otherwise appearing. That the administratrix of I. A. Paschal, joined by George W. Paschal, instituted proceedings in the District Court of Bexar County, Texas, to compel the county surveyor of Bexar County to make the survey of the land by virtue of the aforesaid application made by I. A. Paschal in 1856 in respect to said certificate, and on November 14, 1873, the decreed was so made. That on November 20, 1873, the date of the patent, G. W. Paschal, Jr., who was the heir of George W. Paschal, procured the patent, making an affidavit of ownership of the unlocated balance certificate on same day, a certified copy of which affidavit was introduced in evidence. That in 1874 and 1882 the sales were made to Reus by the Paschals as aforesaid. It does not appear that Jones in his lifetime, or his representatives afterward, exercised any act of ownership in respect to said certificate or said land until the filing of this suit.

*Conclusions of Law.*—The certificate being unlocated until 1856, it was until that time capable of being transferred without writing; and that such a transfer was made may be established by circumstantial evidence. It was held in Bounds v. Little, 75 Texas, 321, that the exist-

ence of a deed could be shown in this manner; but in that case it was not allowed, because there was no preliminary proof of an effort to find the original, and without this, secondary evidence was held to be inadmissible. This preliminary proof need not be made in a case where the conveyance need not have been in writing, as with an unlocated land certificate. It was not improper to admit in evidence circumstances tending to show that the ownership of the certificate, while unlocated, had been transferred from Enoch Jones to the Paschals. The court, by a correct charge, distinctly submitted this issue to the jury.

It would have been improper to present this issue had the circumstances been insufficient to lead to a conclusion that the ownership of the certificate had been changed. We can not say they were insufficient. On the contrary, they fairly lead to that inference. The verdict of the jury necessarily involves the finding that the ownership of the certificate passed to the Paschals; and this disposes of all the questions raised, except such as are directed to the admissibility of the evidence and the correctness of the charges.

It is claimed by the eighth assignment of error that the statement (exhibit B) was immaterial to any issue, because it does not purport to relate to the particular certificate in question, and its introduction was calculated to mislead the jury, and make them believe that in the opinion of the court it tended to prove that Enoch Jones had parted with his title to the certificate. Assuming it to have been immaterial and irrelevant, we fail to see how it could probably have had the effect claimed. Its tendency was more towards showing that the certificate had not been transferred than that it had, and we can not ascribe to it the influence that it is claimed to have had upon the jury.

In establishing a fact by circumstantial evidence, latitude is allowed, and matters that are not admissible as direct evidence of the fact may become proper evidence when they are sought to be considered as tending to prove the fact.

In this inquiry proof of transactions between Enoch Jones and the Paschals in reference to land certificates would more clearly show a relation between them from which a transfer would spring than would be the case if no such relation were shown. We do not believe the testimony was irrelevant.

The second assignment of error is in refusing to give the following charge: " You are further charged, that the papers introduced show the title to the property to be in the plaintiffs, and you will find for the plaintiffs unless you believe from the evidence that they have not parted with their title, or that some of them can not recover by reason of the statute of limitations as heretofore charged." This charge was rightly refused, because it would have excluded the consideration of any transfer by Enoch Jones himself. That plaintiffs had not conveyed the land

was clear, and the charge was practically a charge to find for all the plaintiffs who were not barred.

The theory of plaintiffs in this case seems to be that the exhibit A evidences these facts: That an agreement had been entered into in 1848, by which Jones should purchase land certificates and *deliver* them to the Paschals; that the Paschals were to pay Jones one-third of the purchase price and take one-third interest in the certificates, or the proceeds of the sales or of the land located; that Jones complied with his contract by purchasing 32,943 acres of certificates; that the Paschals did not pay the one-third of the purchase price, and that on April 28, 1855, the said Paschals were still indebted to Jones in the sum of $1339.07, the one-third of such purchase price, which has never been paid; and this state of facts appearing, appellants contend that the Paschals were not in a position to obtain by use of the certificate any title adverse to Jones or his heirs, as their claim would under these circumstances be held in subordination to the right of Jones, and defendant Reus must be charged with notice of this attitude of the Paschals, and also hold in subordination to the rights of Jones' heirs.

An examination will show that these premises are not founded in the facts. The agreement of 1848 was not in evidence, and we know not its terms; and it can not be said that there is any evidence showing that it was part of the contract that the Paschals were to receive the certificates for disposition. We recognize that if it had been shown that the Paschals had obtained possession of the certificate under an agreement with Jones which contemplated the location of the same for mutual account, in accordance with the terms of a contract between them, neither the Paschals nor those claiming under them could hold the certificate or the land so located, by limitations or otherwise, contrary to the right of Jones, until some unequivocal act of repudiation had taken place. But the facts necessary to lead to this conclusion do not appear.

What appears is this: On April 28, 1855, the parties list the certificates they had acquired under an agreement they refer to as having been entered into on May 18, 1848, and ascertain their cost, and show that the Paschals are entitled to one-third and Jones two-thirds of them, and that the Paschals are indebted to Jones for one-third of the purchase price of the same, all of which appears under the signatures of E. Jones and I. A. and G. W. Paschal. The half-league and labor certificate in question appears to be one of the certificates therein mentioned. The paper also evidences, by subsequent entries in the column headed "General Remarks," that many of the certificates were sold, and several of them went to Enoch Jones without sale. It appears to us that nothing in this paper is incompatible with the certificate in question having afterwards gone to the Paschals, and it is not inconsistent with the fact of the Paschals' debt to Jones having been to some extent paid by the proceeds of the sales

made. We are of opinion that this paper does not leave the relation that existed between Jones and the Paschals of such a character as to give application to the principles invoked by the appellants. It was not the duty of the court to submit the case to the jury on this theory of appellants, unless such action had been asked. Only one charge was asked by appellants, and that was correctly refused; as above explained. The case was allowed to be submitted on the one issue of whether or not the certificate had been transferred or sold by Jones to I. A. and G. W. Paschal before location; and, as we believe, upon evidence which, though circumstantial, was sufficient to support the finding of the jury.

Upon this view of the case, the errors in respect to the statutes of limitations become immaterial.

The sixth assignment of error was to the introduction of an affidavit made by George W. Paschal, Jr., on November 1, 1873, on file in the General Land Office, to the effect that he was the just and legal owner of the unlocated balance certificate issued to Julian Diaz, which affidavit had evidently been made in the act of obtaining the patent; the objection being that it was immaterial and irrelevant. In respect to this testimony, the court charged the jury, that it could be considered as evidence by them only in reference to the identity of the certificate upon which the land in controversy was located, and that it could not be considered by them as evidence of title to ownership of the land in controversy or the certificate whereby it was located and patented.

We must presume that a jury of ordinary intelligence would not misunderstand an instruction so clearly expressed, or willfully disregard it. It is only when it is reasonably apparent that the immaterial or irrelevant evidence has affected the verdict that the evidence thus excluded or limited by the court will afford ground for a reversal. Railway v. Mitchell, 75 Texas, 81; Russell v. Nalle, 79 Texas, 664.

The objection presented by the ninth assignment is not tenable, as George W. Paschal, Jr., the maker of the deed, was shown to be the only heir of George W. Paschal.

The deed from Mary C. Paschal to defendant was admissible, as she was the administratrix of I. A. Paschal; and this disposes of the eleventh assignment.

The twelfth assignment of error is to the admission of a deed from J. P. Hector to defendant Reus, which appeared to be by virtue of a location upon the northern part of the land in controversy, and patented to the heirs of Jacob Chappel. Hector appeared to own the Chappel title, and conveyed, as Reus testifies, 127¾ acres, the northern portion of the land in controversy. The objection to this deed was, that it did not purport to convey any portion of the land in controversy. But, in connection with Reus' testimony, it did do this; and although it did not in fact confer title, it was not irrelevant.

The thirteenth assignment complains of the admission of the proceedings of the District Court of Bexar County, in the proceedings brought by the Paschals to require the county surveyor, in 1873, to survey the land by virtue of the location of 1856, on the ground that it was not relevant, and because these plaintiffs were not parties to the cause.

The evidence was properly admitted, for the acts of the Paschals in the exercise of proprietary rights and control over the certificate were circumstances that could be considered in respect to the issue of whether or not the certificate had before its location become the property of the Paschals, in connection with the circumstances that preceded the location. The failure of Jones and his heirs to assert any claim to the certificate or land was a circumstance important to be considered, and for the same reason the continuous assertion of claim by the Paschals was material.

It appears that in 1855, at the time the exhibit A was made, the certificate was not located, and remained so until the following year, when one of the Paschals caused it to be located. His possession of it was not inconsistent with the rights of Enoch Jones, as under their agreement, as evidenced by exhibit A, the possession of either would be the possession of both. But it appears that Paschal had already sold (in 1853) during Jones' lifetime a part of the land to Reus, and this deed was of record. The exhibit A discloses that many of the certificates it related to were sold, and some taken exclusively by Jones. This placed the parties on some other footing, as to those not disposed of, than existed when the paper was executed. Jones lived until 1863, and the land and certificate in question was not inventoried in his estate. I. A. Paschal died, and it went upon the inventory of his estate, and since then, as well as before, the Paschals have exercised dominion over the property, and the representatives of Jones have made no claim whatever. From these circumstances it was admissible for the jury to find that the certificate had become the property of the Paschals; and upon a proper charge they have made such finding, and we think the judgment should be affirmed.

*Affirmed.*

Delivered December 20, 1893.

ON MOTION FOR REHEARING.

JAMES, CHIEF JUSTICE.—The judgment of the District Court is not fairly before us for review for errors relating to the statutes of limitations.

The charges given and refused are as follows:

" You are instructed, that a land certificate, before its location, is personal property, and title thereto will pass by verbal sale. The Julian Diaz land certificate not having been then located, was personal property, and the subject of a verbal sale. Therefore, if you believe from the testi-

mony that Enoch Jones sold said land certificate to I. A. and George W.
Paschal, then you will find for the defendants.    But if you believe from
the evidence that Enoch Jones did not sell said land certificate, then you
will find for the plaintiffs Olive Ann Washington, Flora K. Adams, Char-
lotte J. Hewitt, and Ellen J. Ryan an undivided interest of 126 acres of
the land in controversy.

"You are instructed to find for defendants as against Charlotte T.
Jones and E. G. Jones, for the reason that their title, if any they had,
is barred by limitation.

"You are exclusive judges of the credibility of the witnesses and the
weight to be given to their testimony.

"W. W. KING, Judge.

"You are further charged, that the certified copy of the oath of George
W. Paschal, Jr., as filed in the General Land Office, can be considered
by you as evidence only in reference to the identity of the certificate
upon which the land in controversy was located, and can not be consid-
ered by you as evidence of the title to or ownership of the lands in con-
troversy, or the certificate whereby the same was located and patented.

"If you find for plaintiffs any part of the land in controversy, then
you are instructed to also find in their favor rent at the rate of $1 per
acre per annum since March 19, 1884, for every acre to which plaintiffs
may be entitled."

This additional charge was evidently given, although the record does
not show it as signed by the judge.

Charge asked by plaintiff and refused:

"You are further charged, that the papers introduced show the title to
the property to be in the plaintiffs, and you will find for the plaintiffs, un-
less you believe from the evidence that they have parted with their title,
or that some of them can not recover by reason of the statute of limita-
tion, as heretofore charged.

"Refused.

"W. W. KING, Judge."

We have quoted these in full for two purposes: first, to show that the
charge given by the court in respect to the statutes of limitations was
satisfactory to appellants when the cause was submitted to the jury; and
second, to demonstrate that the jury must have based their verdict on the
finding that the facts and circumstances showed the certificate had been
transferred from Enoch Jones to I. A. and G. W. Paschal.    If they had
not arrived at this conclusion, they would necessarily, under the charge,
have found title in plaintiffs to some of the land.

It was for these reasons that we did not deem it necessary in our for-
mer opinion to treat of errors, if any, relating to the question of limita-
tions.

It may be conceded that the land was not surveyed in 1856, yet the act of filing of the application for a survey of land by virtue of the certificate, with the other evidence of circumstances in the record, are deemed sufficient to support the findings of the jury.  But in the absence of other proof than the agreement in the record, it would be assumed that the land was surveyed in 1856.  The agreement of counsel, that on October 30, 1856, "I. A. Paschal filed with the surveyor of Bexar County an application for a survey of the land in controversy, by virtue of certificate number 66, issued to Julian Diaz, and being survey 133½ in Bexar County, Texas," would lead to the inference that the certificate was located and a survey made of the land at that time.  The judgment against the surveyor of Bexar County in 1873, whereby he was required to make a survey "upon the land which had been filed upon by I. A. Paschal on the 30th day of October, 1856, upon certificate number 66, issued to Julian Diaz, being survey number 133½, situated on the waters of Rosillo Creek, in Bexar County," shows the survey to have been in existence, and the necessary inference is that some further survey was necessary to obtain the patent.

The other grounds stated in the motion for rehearing are sufficiently covered by what is stated in our former opinion.  The motion is overruled.

*Motion overruled.*

Delivered January 17, 1894.

Application for writ of error to Supreme Court refused.