## John R. West v. Matilda Loeb et al.

### Delivered May 8, 1897.

**1. Land Certificate—Joint Owners—Location.**

The owner of a land certificate for 640 acres sold and assigned an undivided one-fourth interest therein, and afterwards a tract of 160 acres was located by virtue of the certificate. The surveyor's records recited that the survey was made for the original owner, but the patent, which issued after the rights of the adverse claimants in this case had attached, issued to the assignee of the one-fourth interest; *Held*, that in the absence of more specific evidence as to the intention of the parties in having the location made, it would be presumed that it was made for the benefit of both, as tenants in common, in proportion to their interests in the certificate.

**2. Bona Fide Purchaser at Execution Sale.**

By force of the registration laws a purchaser of land at execution sale, for value and without notice of prior claims thereto, takes the land as against such claims, and the fact that patent to the land has not issued does not prevent such application of the registry laws.

**3. Notice—Filing Transfer in General Land Office—Case Distinguished.**

The case of Dodge v. Littler, 73 Texas, 320, reviewed, and declared not to announce the rule that the filing of a transfer of a land certificate in the General Land Office is constructive notice of such transfer.

**4. Execution Sale—Proof of Levy.**

Where it appeared at the trial that the execution was lost, but the execution showed the issuance thereof, and the sheriff's deed, which was over thirty years old, recited the levy of the execution on the land, this was sufficient proof of a valid levy of the execution.

Appeal from Dallas. Tried below before Hon. R. E. Burke.

*Dudley & Robertson,* for appellant.

*Dudley G. Wooten* and *John M. McCoy,* for appellees.

Rainey, Associate Justice.—This is an action of trespass to try title brought by Matilda Loeb, joined by her husband, to recover of appellant the 160 acres of land in controversy. The case was tried before the court without a jury, and judgment rendered for appellees.

The evidence shows that on May 19, 1856, the County Court of Denton County issued to John Spoon a headright certificate for 640 acres of land, which was confirmed to him as a valid claim by the District Court of Dallas County at its July term, 1858.

On September 27, 1856, John Spoon, by written transfer, conveyed to James W. Chowning an undivided 160 acres interest in said certificate. The interest conveyed by said instrument, as recited therein, is: "All my right, title, and interest in and to 160 acres of my Colony certificate,

issued to me, said John Spoon, by the County Court of Denton County on the 19th day of May, 1856, for 640 acres; to have and to hold the aforesaid 160 acres of certificate, or the land that may be hereafter surveyed by virtue of the aforesaid certificate," etc.

On May 4, 1857, the 160 acres of land in controversy was surveyed by the county surveyor of Dallas County for John Spoon, and the field notes were duly returned to the Land Office March 9, 1858.

On August 23, 1859, a money judgment was recovered by Ed. C. Bradner against John Spoon et al., in the District Court of Dallas County. By virtue of said judgment an execution was issued September 26, 1859, and placed in the hands of the sheriff of Dallas County, and the same levied upon the land in controversy, as the property of John Spoon, on September 27, 1859, and the land was sold under said execution November 2, 1859, to J. C. McCoy and J. M. Laws for the sum of $50, and a deed was duly executed by said sheriff to said parties, which was filed for record in Dallas County on January 2, 1860.

On September 29, 1859, the said James W. Chowning by written transfer conveyed to James W. Lively his interest in said certificate. Said instrument recites "all my right, title, and interest and claim in and to a certain certificate for 160 acres of land, being part of Colony headright of John Spoon, issued by the County Court of Denton County, Texas, on the 19th day of May, 1856, by the county clerk of said county," etc. Said instrument was filed for record in Dallas County on May 15, 1860.

On February 16, 1861, a patent to the 160 acres in controversy was issued to James W. Lively, as assignee of John Spoon, which was recorded in Dallas County on December 24, 1861.

The appellee Matilda Loeb claims said land by virtue of mesne conveyances from James W. Lively down to herself. She paid taxes on the land in controversy for the years 1886, 1888, and 1894; and redeemed taxes on the land for the years 1882, 1883, 1884, and 1885; and she bought the land with funds belonging to her separate estate.

On October 6, 1894, J. M. Laws, by deed in writing, conveyed to appellant the 160 acres of land in controversy, which deed was filed for record in Dallas County on November 12, 1894. J. C. McCoy and J. M. Laws were both dead at the time of the trial of this case.

The trial court held that the transfer made by John Spoon to Chowning on September 27, 1856, conveyed the land in controversy, and as John Spoon had no interest therein at the date of the sale thereof under execution, no title passed to the purchasers at such sale. At the time said transfer was made the land in controversy was not surveyed, and there is no evidence in the record which indicates that a survey of this particular land was in contemplation by the parties. The surveyor's records recite that the survey was "made for John Spoon by virtue of his Colony headright certificate," and there is nothing in the evidence from which to draw the conclusion that such survey was made for the exclusive benefit of Chowning. The language employed in said instrument does not purport to convey the land in controversy, but simply transfers an interest of

160 acres in the certificate for 640 acres, which entitled Chowning to an undivided one-fourth interest in such land as might be surveyed by virtue of such certificate.

Where there are joint owners of a land certificate they become tenants in common of any land surveyed by virtue thereof, unless the survey at the time made was intended to be for the sole benefit of one of the parties. Mr. Justice Henry, in the case of Kirby v. Estell, 78 Texas, 426, speaking for the court on this line, said: "In order to make a location inure to the separate benefit of one of the joint owners so as to make him sole owner of the land located, the facts must show that at the time of the location it was intended to be for the benefit of some particular owner, and it must be designated with certainty which one it was; and the act of such location must be consistent with the rights of such owner in the certificate. In the absence of evidence sufficient to identity any particular location of a certificate as being for the exclusive benefit of some particular joint owner, it must be treated as made for the benefit of all as tenants in common."

There being nothing in the record to show that the survey was made for Chowning's sole benefit, the most that can be claimed by appellee is that Chowning was a tenant in common with Spoon, his (Chowning's) interest being one-fourth in the land in controversy. The transfer made by Chowning to Lively does not pretend to convey the land in controversy, though made long after the survey was made. It purports to convey his interest in the certificate, the effect of which was to convey to Lively only such interest as he may have had in this land. As Lively never owned but one-fourth interest in the land, the appellees under no phase of the case could be entitled to recover exceeding that amount. The issuance of patent does not affect the status of the case, as the rights of the parties are to be determined by the condition of affairs existing at the time McCoy and Laws bought at execution sale.

We are of opinion that the court below erred in rendering judgment for appellees for any part of said land, for we think such title as Lively may have had passed out of him by the sale under execution and the title vested in McCoy and Laws, the purchasers at said sale.

The land having been duly surveyed by virtue of a valid certificate, it was thereby segregated from the public domain and it became subject to the laws governing the transfer of real estate. Simpson v. Chapman, 45 Texas, 560; Renick v. Dawson, 55 Texas, 102; Hearne v. Gillet, 62 Texas, 23; Adams v. Railway, 70 Texas, 252.

Then what title to the land did McCoy and Laws obtain by their purchase at execution sale? It is well settled in this State that by force of the registration laws, a purchaser of land at execution sale, who pays a valuable consideration therefor, without notice, actual or constructive, of prior claims thereto, is a bona fide purchaser, and takes the land as against such claims. Ayers v. Duprey, 27 Texas, 592; Cavenaugh v. Peterson, 47 Texas, 197; Holmes v. Buckner, 67 Texas, 107.

Land located by virtue of a valid certificate is subject to be sold under execution, and a bona fide purchaser at such sale secures the title thereto. "Contracts in writing concerning land, to have effect against innocent purchasers and creditors, must be proved and recorded. So must a contract which is to effect or pass an interest in land after its location." Lewis v. Johnson, 68 Texas, 448; Simpson v. Chapman, supra.

At the time McCoy and Laws bought at execution sale the land in controversy had been surveyed and the field notes returned to the General Land Office, and there was nothing to put them on notice of any claim to the land other than that of John Spoon. The surveyor's record, as before stated, showed the land to have been surveyed "for John Spoon by virtue of his Colony headright certificate." The conveyances to Chowning and to Lively were not recorded in Dallas County; nor is there any evidence in the record to show that they were filed in the Land Office, though the court below held that by reason of such filing constructive notice of Lively's claim was conveyed to McCoy and Laws, the purchasers at execution sale. Appellees contend such notice was sufficient, and in support of such contention cite the case of Dodge v. Littler, 73 Texas, 320. By a careful examination of that case, it will be seen that it does not hold that the filing of the transfer of the certificate in the Land Office is of itself notice of such transfer, but that the second purchaser of the certificate, under the circumstances, was put upon inquiry, and that inquiry would have led to the knowledge of a prior right thereto. On the other hand, it is held in Lewis v. Johnson, 68 Texas, 448, that the filing of a transfer of a land certificate in the General Land Office is not notice of such transfer. But, as before stated, the record fails to show that the transfers to Chowning and to Lively were filed in the General Land Office at the time of the sale of the land under execution. The evidence tends to establish the reverse, in that it shows the original transfers were recorded in Dallas County before the issuance of patent to Lively, but after the sale of the land under execution, which could not have been legally done had such transfers been on file in the General Land Office at the time of the execution sale.

From the foregoing it will be seen that there was no constructive notice; and as both McCoy and Laws were dead at the time of the trial, under the facts, the presumption should be indulged that they had no actual notice. Rogers v. Peters, 80 Texas, 425. Therefore they were bona fide purchasers, and entitled to recover.

It is insisted that no valid levy of the execution was shown. It was shown that the execution was lost, but the execution docket showed the issuance thereof; and the sheriff's deed, which was over thirty years old, recited the levy of the execution on the land in controversy, and sale thereunder to McCoy and Laws for the sum of $50. We think this sufficient. Holmes v. Buckner, 67 Texas, 107; Ruby v. Van Valkenberg, 72 Texas, 459; Tucker v. Murphy, 66 Texas, 355.

It is further insisted that there was no law requiring transfers of certificates to be registered at the time McCoy and Laws purchased the land, and as Spoon had transferred the 160 acres interest in the certificate, the

title had passed out of him, and having no interest the sale did not affect the interest of Lively.

While this rule ordinarily applies to interests in certificates before location, we are of opinion that the registration laws then applied to land that had been located, and the duty devolved upon Lively to have his claim recorded in order to protect his interest. Not having done so, and McCoy and Laws having purchased the land without notice of a prior claim, and having paid a valuable consideration therefor, the title to the whole tract vested in them.

West owns the Laws interest, and an outstanding title to the balance being shown to be in McCoy, the appellees were not entitled to recover. The judgment is therefore reversed, and here rendered for appellant.

*Reversed and rendered.*