WILLIAM BOOTH ET AL. v. S. C. CLARK.

Decided January 21, 1904.

1.—Land Certificate—Transfer—Evidence—Recital.

Recitals in a transfer of a land certificate indorsed thereon that the assignor, who was a son and heir of the grantee, was entitled to one-half of the certificate for obtaining it, were not of themselves sufficient to establish such latter fact, although the instrument was forty years old.

2.—Same.

Evidence in addition to such recitals considered and held sufficient to sustain a finding that the assignor was entitled to a half interest in the certificate for securing its issuance.

3.—Same—Community Property—Sale by Surviving Wife.

Such half interest having been acquired by the assignee during the existence of the married relation, became community property of himself and his wife, and a sale by her after his death, though made for the purpose of obtaining necessaries for herself and children, passed only her interest.

Appeal from the District Court of San Jacinto. Tried below before Hon. L. B. Hightower.

*P. E. McMahon* and *McKinney & Hill,* for appellants.

*Robinson & Hansbro,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by the appellee against the appellants, William Booth, S. E. Green and P. E. McMahon, to recover the title and possession of a tract of 320 acres of land in San Jacinto County patented to the heirs of James Booth. The petition is in the usual form.

The defendants answered by a plea of not guilty, and by cross-action set up title in themselves and prayed for a recovery of the land.

The trial in the court below was to the court and resulted in a judgment in favor of the plaintiff for one-half of the land. From this judgment the defendants below prosecute this appeal.

The certificate under which the land was located and patented was issued by the Board of Land Commissioners of Polk County on November 26, 1849, to James Booth for 320 acres of land. James Booth died in 1842. He left as his heirs at law eight children. In 1862 W. S. Booth, who was a son of James Booth, sold to his brother, David C. Booth, a one-half interest in this certificate. This transfer is written upon the back of the certificate and is as follows: "For and in consideration of the sum of fifty-five dollars I do assign all my right to the one-half of the written certificate that I am entitled to for obtaining it out of the Land Office, etc., to David C. Booth. Signed and delivered on this the 18th day of May, 1862. Wm. Booth. Attest: A. E. Carnegie."

At the time this transfer was made David C. Booth was married to Jane Booth. After the death of David C. Booth, and some time prior to 1865, his surviving wife, the said Jane Booth, sold the certificate

to William Lovett. This sale was made by Jane Booth in order to procure necessaries for herself and minor children.

The certificate of the surveyor attached to the original field notes shows that the land was surveyed for the heirs of James Booth and William Lovett. The patent was issued to the heirs of James Booth on February 20, 1879. It was delivered to Lovett and he paid the fees therefor.

There has never been any actual possession of the land. The appellee has a regular chain of title from Lovett to himself, and he and his vendors have rendered the land for taxes and paid all taxes assessed thereon since 1880. The defendants William Booth and S. E. Green are children of David C. and Jane Booth, and defendant McMahon has a power of attorney from the children of several of the other heirs of James Booth. William Lovett and all of the children of James Booth are dead. It is not shown that any of the children of James Booth other than the said William and David C. ever asserted any claim to the certificate or to the land located thereunder.

The appellants have never paid any taxes on the land and have only recently asserted claim to an interest in the land.

Upon these facts the trial court found that William Booth acquired a one-half interest in the certificate for his services in obtaining its issuance, and that Jane Booth, being the wife of David C. Booth at the time he purchased said interest from William Booth, it became the community property of the said David and Jane, and her sale of same to William Lovett after the death of her husband for the purpose of obtaining necessaries for herself and minor children passed the title to the whole of said one-half interest to said Lovett.

Appellants' first assignment of error attacks the finding of the court below that William Booth became the owner of one-half of the certificate for his services in obtaining same, on the ground that there is no evidence to sustain such finding. The contention under this assignment is that the recital by William Booth in the transfer of the certificate to David C. Booth that he was entitled to one-half of the certificate for obtaining same is not sufficient in itself to establish that fact.

We agree with appellants' counsel that the recitals in this transfer, although the instrument is forty years old, are not in themselves sufficient to sustain the finding that William Booth was the owner of one-half of the certificate at the time he transferred same to his brother, and we do not understand the trial court to have so held. We think, however, the finding of the trial court upon all the facts in evidence that William Booth was entitled to a one-half interest in the certificate for his services in obtaining same should be sustained. The record shows that the certificate was not issued until after the death of James Booth, and in order to obtain the certificate it was therefore necessary for some person to procure and present to the board of land commissioners the evidence showing that said Booth was entitled to same.

When the certificate was issued it would naturally be delivered to the person who had procured its issuance. We find William Booth in possession of the certificate claiming to own a one-half interest therein as compensation for his services in obtaining it. He sells this interest to his brother, who must have known whether or not this claim was true, and presumably would not have purchased it but for his knowledge that William Booth had performed services which under an agreement with the heirs of James Booth entitled him to a one-half interest in the certificate. The possession of the certificate remained in David C. Booth until his death and then with his widow until she sold it to Lovett, who had possession of it until the land was located. Both William Booth and Lovett are shown to have continuously claimed to own a half interest in the certificate after it came into their possession, and none of the other heirs of James Booth are shown to have asserted any adverse claim. The certificate was located and the patent for the land obtained by Lovett, and he and his vendees have continuously asserted claim thereto and have paid all taxes thereon. The transfer from William Booth to David C. was, as before stated, written upon the back of the certificate, and thus in the most effective manner gave notice to the other heirs of James' Booth of his assertion of ownership to one-half of the certificate. This transfer has been an archive of the Land Office for a number of years.

In view of all these facts and in the absence of any fact inconsistent with the claim of William Booth that he owned one-half of the certificate, we think a transfer or a contract between William Booth and the other heirs of James Booth, whereby he became the owner of one-half of the certificate for his services in procuring same, should be presumed. Davidson v. Wallingford, 88 Texas, 624; Huff v. Crawford, 89 Texas, 220; Stafford v. Kreinhop, 63 S. W. Rep., 168.

The evidence amply supports the conclusion of the trial court that David C. Booth and Jane Booth were married to each other at the time the certificate was transferred to the husband, and it thereby became the property of said community.

The transfer by Mrs. Booth after the death of her husband for the purpose of obtaining necessaries for herself and children was unauthorized as to the interest of the children in said certificate and their interest did not pass by such transfer.

From the conclusions above expressed it follows that the judgment of the court below should be reversed and judgment here rendered in favor of appellee for an undivided one-fourth of the land in controversy, and it is so ordered.

*Reversed and rendered.*