FRANK HUGHES, administrator, *vs.* NORTHAMPTON STREET
RAILWAY COMPANY.

Hampshire.    September 26, 1911. — October 21, 1911.

Present: RUGG, C. J., HAMMOND, BRALEY, & SHELDON, JJ.

*Equity Pleading and Practice*, Master's report, Appeal.    *Corporation*, Transfer of
shares.    *Evidence*, Presumptions and burden of proof.

In this suit in equity by an administrator against a corporation and one of its
shareholders, in which the plaintiff alleged that his intestate at the time of his
death had owned shares of stock in a corporation which had been absorbed
by the defendant corporation and that in a reorganization of the defendant cor-
poration his rights had been given wrongfully to the individual defendant, a
master to whom the case was referred found that, although a certificate for the
shares in question, indorsed in blank by the person to whom they originally
were issued, was found among the effects of the plaintiff's intestate after his
death, from other facts it appeared that another person had owned the shares
and had sold them to the individual defendant; and an appeal by the plaintiff
from a decree overruling exceptions to the master's report was dismissed, the evi-
dence not having been reported by the master and none of his findings neces-
sarily being inconsistent with subsidiary findings reported by him.

In a suit in equity by an administrator seeking to establish his rights to certain
shares of the capital stock of a corporation which he alleged were owned by the
intestate at the time of his death, where the title to the shares is in dispute, evi-
dence introduced by the defendant tending to show that, two years after the
plaintiff's intestate practically had retired from business, he filed a voluntary
petition in bankruptcy and that in the sworn schedules of his assets the shares
in question were not mentioned, is competent and material.

BILL IN EQUITY, filed in the Superior Court on July 19, 1909,
by the administrator of the estate of John Hughes late of Passaic
in the State of New Jersey against the Northampton Street Rail-
way Company and John C. Hammond, Esquire, averring in sub-
stance that at the time of his death the plaintiff's intestate was
the owner of one hundred shares of the capital stock of the de-
fendant railway company, "formerly named the Northampton
and Williamsburg Railway Company," which certificate stood
in the name of one Israel E. Sayres; that by reason of a reduc-
tion in the capital stock of the defendant the plaintiff was the
owner of, and was entitled to receive a certificate for, sixteen
and two thirds shares of stock of the defendant; that the de-
fendant company had wrongfully issued to the defendant Ham-

mond and one M. H. Spaulding, now deceased, and that the defendant Hammond had notice of such unlawful issue when he received the certificate.   The prayers of the bill were in substance for a recognition of the plaintiff's rights as owner of shares of the defendant corporation and for an accounting as to dividends paid to the defendant Hammond.

The case was referred to James L. Doherty, Esquire, as master.   In his report he found the following facts :

In 1871 one hundred shares of the capital stock of the Northampton and Williamsburg Street Railway Company were issued to one Isaac Sayres, of New York city.   A certificate representing these shares and numbered 171 was transferred by indorsement in blank on the back thereof dated in November, 1873, to one Kalley and by Kalley, without additional indorsement, to one Stiger.   Both Kalley and Stiger also resided and did business in New York city.

John Hughes, the plaintiff's intestate, resided in New York city at and before 1871, removing therefrom to Maryland in 1876, but returning from time to time after the latter date for the purpose of transacting business.   He was a real estate broker and commission merchant.   In the early years of his residence in New York city he was in affluent circumstances, but later met with financial reverses and in 1878 became a voluntary bankrupt under the then existing national bankruptcy act.   After 1876 he ceased to have any active business or income and until his decease in 1890 he was supported by his son, the plaintiff. The family, composed of the plaintiff's intestate, the plaintiff's intestate's wife, two daughters, and two sons, moved several times during the years between 1882 and 1886, when the intestate came to live with the plaintiff and continued to reside with him until his death.

When the intestate and his family removed from New York city to Maryland, among the family effects was a desk cabinet in which the intestate kept documents and papers.   This cabinet remained with the family during the successive removals and was part of the effects of the intestate upon his decease.   After his death, the key of the cabinet having been lost or its whereabouts unknown to the family, the cabinet was broken into and an inspection was made of its contents, among which was found

the certificate of the Northampton and Williamsburg Street Railway Company, numbered 171.

The plaintiff, being the son and administrator of the estate of John Hughes, came to Northampton on April 15, 1908, bringing the certificate in question, and sought to have this certificate transferred upon the books of the Northampton Street Railway Company, which had succeeded to the rights and property of the Northampton and Williamsburg Street Railway Company.

Previous to 1880 the defendant corporation took over the property of the Northampton and Williamsburg Street Railway and agreed to issue its stock in payment therefor in the proportion of one share for six. In 1880 certain persons living in Massachusetts, among whom was the defendant Hammond, became interested in the defendant corporation and proceeded to reorganize it under St. 1873, c. 48, and previous to doing so undertook to procure all the shares of stock in the corporation which they could obtain, including shares of the Northampton and Williamsburg Street Railway Company. Certificate numbered 171 in question fell under their notice and the stockholder of record, Israel E. Sayres, was communicated with. A postal card was received from him bearing date October 8, 1880, in which he stated: "I sold my stock three years since to J. N. Kally, Montague Street, Brooklyn." Under date of December 9, 1880, J. N. Kalley wrote in reference to this certificate: "John S. Stiger, 176 Broadway, is the owner of the stock I once held of the N. H. R. R. stock." Following this information, the defendant Hammond visited New York and called upon John S. Stiger at his place of business and interviewed him in regard to the shares of stock represented by certificate numbered 171. Stiger stated that he was the owner of the shares of stock in question and after some parleying bargained for the sale of the shares to the defendant Hammond. After the terms of the sale had been agreed upon Stiger searched about his office to find the certificate, but was unable to do so, and finally on December 22, 1880, for about $150 signed a transfer of all his "right, title and interest in old Stock Certificate No. 171, one hundred Shares of the Capital Stock of the Northampton and Williamsburg Street Railway Company, now standing in the name of Israel E. Sayres," to Spaulding and the defendant Hammond.

Sayres, Kalley and Stiger all were dead at the date of the hearing and for a considerable number of years previous thereto. They all had been engaged in real estate and stock brokerage business and were engaged in such business when the plaintiff's intestate lived in New York and also was engaged in a similar business.

The plaintiff's intestate filed a voluntary petition in bankruptcy in 1878, accompanying which was a schedule of assets, but certificate numbered 171 was not listed in such schedule. This schedule was accompanied by the usual affidavit to the effect that it contained a list of all the property owned by the bankrupt at the date of the petition. On November 16, 1908, the assignee of the bankrupt estate of John Hughes, the plaintiff's intestate, assigned to the plaintiff his interest in certificate numbered 171.

The report continues: "I find that Stiger was the owner of the one hundred shares of stock represented by certificate 171 at date of sale of such shares to defendant Hammond, December 22, 1880, and the intestate did not come into possession of such certificate by payment of any valuable consideration for the shares represented by it, and the successors in title of Stiger and Hammond are by virtue of such succession the owners of the shares of stock issued by the Northampton Street Railway Company in exchange for or in lieu of shares of stock represented by said certificates.

"All facts material or conducing to the findings contained in the foregoing paragraph are set out in this report and such findings are based upon the facts found herein together with inferences to be legitimately drawn therefrom."

The first exception of the plaintiff to the master's report was as follows: "(1) The plaintiff excepts to the finding that the plaintiff's intestate filed a schedule of assets accompanying his petition in bankruptcy in which certificate No. 171 was not listed, and that this schedule was accompanied by the usual affidavit to the effect that it contained a list of the property owned by the bankrupt at the date of the petition for the reason that said schedule and accompanying affidavit were incompetent and inadmissible and were admitted in evidence over the objection of the plaintiff, and that the facts found by the master are

immaterial to any issue in this case." Other exceptions are described in the opinion.

The case was heard by *Sanderson,* J., who ordered a decree overruling the exceptions to the master's report, confirming the report and dismissing the bill. A decree was entered accordingly; and the plaintiff, consenting to a dismissal of the suit as to the defendant Hammond, appealed from its dismissal as to the defendant corporation.

The case was submitted on briefs.

*R. A. Knight & E. H. Brewster,* for the plaintiff.

*S. S. Taft,* for the defendant.

SHELDON, J. The decree appealed from was warranted upon the master's report. All but the first of the plaintiff's exceptions to that report rest simply upon the claim that the findings excepted to were unwarranted. But none of these findings are necessarily inconsistent with the subsidiary findings reported, and the evidence is not before us. It follows that we cannot sustain these exceptions. *Freeland* v. *Wright,* 154 Mass. 492. *Crosier* v. *Kellogg, ante,* 181.

As to the first exception, if we assume that the competency of the evidence can now be considered, yet the plaintiff has not directly argued that it was not competent for the defendant to prove and for the master to find conduct and statements of the plaintiff's intestate inconsistent with the claim that the intestate was the owner of the shares of stock in question. Manifestly this was competent and material.

The decree must be affirmed with double costs.

*So ordered.*