CONDIT et al. v. GALVESTON CITY CO. et al. (No. 7129.)*

(Court of Civil Appeals of Texas. Galveston. April 5, 1916. On Motion for Rehearing, May 4, 1916.)

1. EVIDENCE ⬤⟞332(7) — DOCUMENTARY EVIDENCE—COURT RECORDS—OTHER STATES.

In an action by heirs, to obtain recognition as stockholders in defendant company, where a share of stock, with others which were later disposed of, was issued in 1838 to plaintiff's ancestor, documentary evidence of probate proceedings in the city of New Orleans in 1840, showing that the share had been owned by a party in New Orleans at the time of his death and sold by his representative, pursuant to order of court, was admissible 75 years later for consideration in determining whether plaintiffs' ancestor, to whom the share of stock was issued, did or did not dispose of it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1245; Dec. Dig. ⬤⟞332(7).]

2. CORPORATIONS ⬤⟞139 — STOCKHOLDERS — TRANSFER OF STOCK—SUFFICIENCY OF EVIDENCE.

In an action by heirs to obtain recognition as stockholders in a corporation in which their ancestor purchased a share of stock, evidence *held* to authorize finding that such ancestor had transferred or otherwise disposed of his share.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 467, 469; Dec. Dig. ⬤⟞139.]

3. CORPORATIONS ⬤⟞114—SALE OF STOCK—TRANSFER OF CERTIFICATE.

A share of stock in a corporation may be sold by parol, or pass by delivery of the certificate whereby the ownership is evidenced.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 466, 470–478; Dec. Dig. ⬤⟞114.]

4. EVIDENCE ⬤⟞353(3)—RECITALS IN ANCIENT DEEDS—SALE OF PERSONALTY.

Recitals in ancient deeds are admissible as tending to prove a sale of personalty, such as corporate stock, without showing of possession under the recited transfer, the assertion of a claim of title thereunder, or enjoyment of the property transferred for a long period of time.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1408; Dec. Dig. ⬤⟞353(3).]

⬤⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

**5. CORPORATIONS ☞139 — TRANSFERS OF STOCK—RECORD EVIDENCE—IDENTIFICATION OF CORPORATE STOCK.**

In suit by heirs to obtain recognition as stockholders in a company in which their ancestor purchased stock, instruments, admitted in evidence for defendants, tending to show that in 1840, two years after the ancestor purchased, he had sold a share of the stock, having disposed of the rest, to a New Orleans decedent, whose personal representative sold it pursuant to order of court, were admissible as sufficiently identifying the stock referred to as being the certificate in controversy, where the stock was described as being "in the City of Galveston," the certificates describing the corporation as "the City of Galveston," and the language describing the certificates transferred being identical with the language in the face of the certificates, etc., though the instruments recited the value of the stock, when no par value was stated in the certificate.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 467, 469; Dec. Dig. ☞139.]

**6. JOINT-STOCK COMPANIES ☞8—TRANSFER OF STOCK—PASSING TITLE.**

Where there was no rule or by-law of a stock company, not a corporation, requiring its stock to be transferred upon its books, or otherwise regulating the manner of sale, the legal title to a share passed by transfer and delivery of the certificate, by the person to whom it was issued, to another.

[Ed. Note.—For other cases, see Joint-Stock Companies, Cent. Dig. § 8; Dec. Dig. ☞8.]

**7. CORPORATIONS ☞170 — STOCKHOLDERS — RIGHTS AS SUCH.**

Where the party, to whom a share of stock in a joint-stock company, which later became a corporation, was issued, sold to another person, so that either legal or equitable title to the stock passed, the heirs of the seller thereafter had no such title to the stock of the corporation thereafter chartered as authorized them to maintain suit for recognition as stockholders, etc.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 624–632; Dec. Dig. ☞170.]

**8. APPEAL AND ERROR ☞1068(5)—HARMLESS ERROR—FAILURE TO CHARGE.**

In an action by heirs for recognition as stockholders, error in failing to charge that identity of persons is presumed from identity of name, plaintiffs' ancestor having the same name as a party to whom defendant corporation issued shares, was harmless, where the jury necessarily found, under their general verdict, that plaintiffs' ancestor, to whom a stock certificate was issued, transferred or otherwise disposed of it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4230; Dec. Dig. ☞ 1068(5); Trial, Cent. Dig. § 475.]

**9. APPEAL AND ERROR ☞1071(3)—HARMLESS ERROR—FINDING.**

In suit by heirs for recognition as stockholders, where the evidence justified the jury in finding that plaintiffs' ancestor had sold his certificate of stock, error in their finding against the manifest weight and preponderance of the evidence that plaintiffs' ancestor was a different person of the same name as the one to whom certificate of stock was issued, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4236; Dec. Dig. ☞ 1071(3).]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Suit by George A. Condit and others against the Galveston City Company and another.

From a judgment for defendants, plaintiffs appeal. Affirmed.

Geo. E. Mann, of Galveston, and Ramsey, Black & Ramsey, of Austin, for appellants. Maco Stewart, Edw. F. Harris, Barret Gibson, and Clarence F. Milheiser, all of Galveston, for appellees.

McMEANS, J. This suit was brought by George A. Condit and others, as heirs of Lewis Newbold Condit, against the Galveston City Company and Maco Stewart, alleging the ownership by said Lewis Newbold Condit of stock in the Galveston City Company and the loss of the certificate therefor, and seeking as his heirs to obtain a new certificate and recognition as stockholders, and to obtain a judgment for dividends due, and for a proportionate share of the assets of the corporation. On the trial of the case before a jury a verdict was returned and a judgment rendered thereon in favor of the defendants, from which judgment the plaintiffs, after their motion for a new trial had been overruled, have appealed.

The plaintiffs' petition is almost identical with the petition in the case of Yeaman v. Galveston City Company heretofore appealed to this court (173 S. W. 490), and on which appeal certain questions arising on the pleadings were certified to and answered by the Supreme Court (167 S. W. 710). The only changes are such as were necessary in view of the fact that this suit involves only one share, whereas that suit involved five, and this suit is, of course, brought by different parties. All other material allegations are identically the same. As none of the questions involved on this appeal arise on the pleadings, we think the following brief statement of the pleadings is sufficient to disclose the nature of the cause of action asserted by plaintiffs and the defenses set up by the defendants.

Plaintiffs allege: That on the 13th day of June, 1837, Michael B. Menard, claiming to own a league and labor of 4,605 acres of land on the east end of Galveston Island, the site of the present city of Galveston, having previously associated with himself in the ownership thereof certain other persons, to the petitioners unknown, entered into a written agreement on behalf of himself and his associates with Robert Triplett, Sterling Neblett, and Wm. F. Gray, the latter claiming an interest in and to 640 acres of land out of said league and labor adverse to the claim of Menard and his associates. That the said persons entered into said agreement, having as their purpose the issuance of shares of joint stock representing the proceeds of the sale of the land and having in contemplation the formation of a joint-stock company, and with a view of promoting their common interest without unnecessary conflict and in order to reconcile their conflicting interests.

That by the terms of said agreement the parties aforesaid, reciting that "whereas, it being in the contemplation and intention of all the parties to these presents, that the said league and labor of land should be laid off into lots, for the purpose of building a town thereon, and it being found most beneficial to all parties concerned, that the whole of the said league and labor of land should be held on joint account, in.the proportions hereinafter specified, and should be under the control, and at the disposition of the same set of commissioners or trustees, acting upon common plan in regard to the whole, instead of being held partly by the said Jones, and partly by the said Thomas Green, L. Jones, and W. R. Johnson, under different titles and plans, whereby injurious competition and conflicts of interest may be produced, "by the terms of said instrument, conveyed the said land and their several interests therein to Thomas Green, Levi Jones, and Wm. R. Johnson, as trustees, authorizing the said trustees to divide the said league and labor of land into 1,000 shares of joint stock and authorizing them to issue certificates evidencing the said 1,000 shares and providing for the transfer by assignment of said certificates. It was further recited in said agreement that said Menard theretofore on April 18, 1837, had conveyed a portion of said league and labor of land to Levi Jones, authorizing the said Jones to issue 1,000 shares, evidenced by certificates, against said land, and further that said Jones had actually issued certificates for 400 shares, many of which have been sold. It was further provided by this trust agreement that the 400 shares issued by said Jones should be regarded as 400 shares under the trust agreement, and that the lawful holders of the certificates issued by Jones should have the right, upon surrendering their certificates, to obtain other certificates in lieu thereof, issued and signed by the trustees.

Four hundred of said 1,000 shares having been thus disposed of, it was further alleged that as to the remaining 600 shares the instrument provided that they should be sold by the trustees or commissioners and the proceeds of said sale, after the expenses of the trust should be first deducted, should be divided into three parts, one of which should be paid to said Robert Triplett and those claiming under him, and the other two parts to be paid to M. B. Menard and those claiming under him, with the further provision that in case any of the said shares should not be sold one-third of the unsold shares should belong to Triplett and his associates, and two-thirds thereof should belong to Menard and his associates. It is also alleged that the instrument contained provisions with reference to the repayment of a loan obtained by M. B. Menard from one David White. It was further alleged that the instrument provided that the trustees or commissioners should, as soon as in their opinion they had sold a sufficient number of shares, call a meeting of the shareholders, giving notice thereof, and that at said meeting each share should be entitled to one vote, the holder to appear in person or vote by proxy, and that so many of the 400 shares as had been issued to Jones should be represented by Menard and that of the unsold portion of the remaining 600 shares, two-thirds thereof should be represented by Menard and one-third by Triplett or those claiming under him. It was further alleged that the instrument provided that the trustees should hold the title to the league and labor of land "subject to the orders of the shareholders as adopted at their general meetings and the rules and regulations prescribed by them," and that they should make all conveyances of the land which they should be required to make by the shareholders, further empowering any two of them to act. There are allegations of other provisions of the instrument not deemed by us to be material, and they are therefore not set out.

The plaintiffs averred: That in pursuance of the terms of said instrument, the trustees shortly thereafter, about the month of July, 1837, supplied themselves with 1,000 printed certificates of joint-stock representing an equal number of joint-stock shares in the capital stock of the joint-stock company to be organized in pursuance of said instrument, and that said certificates were bound into five books of 200 certificates each, designated as Books A, B, C, D, and E, respectively, and that each share of said 1,000 shares of joint stock represented an interest of $1/1000$ in the net proceeds of the sale of said league and labor of land. That the trustees invited and solicited subscriptions for the 600 shares which were to be sold under the terms of said instrument, and that many persons, upon invitation and solicitation, became purchasers and owners of said shares, and that thereafter a sufficient number of shares being sold, in the opinion of the trustees, they called a meeting of the shareholders to be held on April 13, 1838, at Galveston, Tex., and at such meeting the owners of said joint stock organized a joint-stock company called the "Galveston City Company," in pursuance of said instrument, and elected certain persons named as directors of the said company, and further ordered and required the said trustees to convey the said land to the board of directors of said company. That in pursuance of said order two of the three trustees did convey the said land to the directors of the Galveston City Company. That Lewis Newbold Condit, of the state of New Jersey, deceased, for a valuable consideration by him paid to said trustees during his lifetime, became the purchaser and original owner of one of said joint-stock shares in the capital stock of said joint-stock company, the Galveston City Company, and that in evidence of said ownership, two of the trustees in pur-

suance of the trust agreement issued and delivered to the said L. N. Condit one joint-stock certificate, said certificate being No. 168, dated May 31, 1838, and being out of Book B. That said L. N. Condit died intestate on the 25th of January, 1865, and that plaintiffs herein were and are his sole heirs and entitled to recover all right and interest of his estate. That the said Condit at the time of his death possessed and was entitled to the said one share of the capital stock of the said company, the ownership of which by him was evidenced by the books of the company, and that the certificate issued to him has never, at any time, been surrendered or canceled, but has been lost.

It is alleged: That on December 31, 1838, a resolution was adopted by the stockholders of the joint-stock company providing for the opening of a book for the registration and transfer of stock, and further providing for notice of the time of opening of said book and providing that it should be the duty of the holders of the trustees' certificate to file and register them and to receive in lieu thereof a certificate under the seal of the company, and that this should be deemed necessary to enable the shareholders to receive dividends declared, and that in pursuance of this resolution a "stock ledger" was opened, and that in this book, when a certificate of the trustees' stock was presented to the secretary or agent of the joint-stock company, he issued a new certificate called a "renewal certificate" for said trustees' certificate, and that the issuance of said renewal certificate was entered on said stock ledger, showing the date of the issuance thereof, to whom same was issued, and what certificate or certificate of the trustees' certificates the same was issued in lieu of. That certificate No. 168, out of Book B, issued to L. N. Condit, has never been surrendered for a renewal certificate. That said renewal certificates were so called to distinguish them from the original trustees' certificates issued by the trustees.

It is alleged: That the Galveston City Company prepared a book styled "Agents' Reports and Stock Register, Galveston City Company," and that in this book the 1,000 shares of trustees' stock were entered, the same showing the issuance of the entire 1,000 certificates, to whom each was issued and the dates of issuance and by whom surrendered for cancellation or renewal, and that the said book shows the issuance to L. N. Condit of certificate No. 168, out of Book B, and shows same to be outstanding. That the canceled trustees' certificates received by the company for renewal certificates or canceled and paid into the company for lots purchased from the company are held and preserved by the company, and that the certificate in controversy is not among said canceled and surrendered certificates, and has not in fact been canceled.

It was further alleged by plaintiffs: That on February 5, 1841, the Congress of the Republic of Texas passed an act incorporating "the stockholders of the Galveston City Company" and that under the terms of said act said L. N. Condit, as the owner of said one share, evidenced by certificate No. 168, became a stockholder in the corporation. That the defendant company has preserved the stubs showing the issuance of the original 1,000 trustees' certificates, and that the stubs of said Book B show the issuance of certificate No. 168, out of said Book B, to plaintiffs' ancestor, L. N. Condit. That it became the policy of the Galveston City Company shortly after its organization to accept from its stockholders shares of stock at a par value of $1,000 per share in exchange or pay for its land, and that in a large majority of the sales and conveyances of lots by the company, the company received, instead of money, a surrender by the purchaser of shares of trustees' or renewal stock of the company owned by the purchaser, and that in this way very many of the shares of the company had been sunk and retired, and that in this way there remained not more than 20 of the 1,000 shares, and that one of said 20 shares was the share in controversy issued to L. N. Condit. That the stock register of the company contains a full and accurate history of the entire 1,000 shares of trustees' stock, and that the stock ledger of the company shows the cancellation of all trustee stock that was received for renewal certificates, and that the journals of the company show the cancellation of all trustee stock surrendered for property purchased, and that these three books together show the surrender and cancellation of 991 trustees' certificates, leaving 9 of the original trustees' certificates outstanding, and that the said stock register and other books show that only 11 of the renewal certificates remained outstanding, making 20 certificates, trustees' and renewal, as all of the stock outstanding.

The petition also contains various averments, which we do not deem necessary to set out, showing continuous recognition of the 1,000 trustees' certificate shares, and recognition of said shares as valid stock in the Galveston City Company.

Plaintiffs further alleged that all of the steps taken by the said Stewart since July 7, 1909, whereby he acquired control of all of the renewal stock of the company and undertook to liquidate the same and obtain control of all of its property, were taken with full knowledge of the rights of the 9 lost trustees' certificate shares, and of the fact that no dividends had been paid to said shares. They further aver that they had no knowledge until a few weeks prior to August 28, 1909, of the ownership by their ancestor of the shares of stock in controversy, and that full evidence of said rights existed on the books of the company.

The plaintiffs prayed for a discovery by the defendants setting forth all the contents of the books, records, and other papers in their possession relating in any way to the trustees' stock and to the 9 lost trustees' certificate shares, including the plaintiffs' said share, and for a production on the trial by the defendants of all of said books, records, and papers which are referred to in detail in the petition. They further pray that they be adjudged and decreed the owners of said share of stock, and that a renewal certificate be issued to them in the form used by the defendant company, and that they be decreed to share ratably and equally as the other renewal stockholders of the company have done in all earnings and accumulations of the property of whatever nature by the company, and that they have judgment for the amount of the dividends due on their share, to wit, $32,500, and that a lien be fixed upon the property of the corporation to secure the payment of the said dividends. They further pray that the transfer and alleged sale of the land to the said Stewart, together with the deeds of conveyance, be set aside and canceled, that all of the proceedings whereby the said Stewart undertook to liquidate the affairs of the corporation be set aside, and that they have judgment against the said Stewart for such damages as may have been sustained by the corporation by reason of his conduct. They further pray that their right to a proportionate share of all the property and assets of the corporation then on hand be fixed and decreed by the judgment, and for general relief.

The defendants answered, denying: That L. N. Condit, mentioned in plaintiffs' petition and ancestor of the plaintiffs, was the L. N. Condit who was the original owner and holder of certificate B–168. In other words, the defendants raise the issue that the L. N. Condit from whom the plaintiffs claim was not the L. N. Condit to whom the certificate of stock claimed by plaintiffs was issued. That the L. N. Condit, to whom certificate B–168 was issued, sold and transferred said certificate. Defendants further alleged, in substance, that L. N. Condit, to whom certificate B–168 was issued, received 26 trustees' certificates, and that on June 5, 1838, he transferred said 26 certificates, including the one in controversy, to various persons named in the answer: No. 168 out of Book B being transferred to one Le Page and that thereafter each of said parties to whom said 26 trustees' certificates were transferred in turn transferred and disposed of the same, and that said certificates, including the one in controversy, finally were canceled and taken up, some by the Galveston City Company, unincorporated, and the remainder by the Galveston City Company, Incorporated. In other words, the defendants alleged the transfer of said certificate No. 168 and the surrender to and cancellation thereof by the corporation. That said certificate B–168 was canceled on the book, Agents' Reports and Stock Register.

Defendants further set up the statute of limitation, laches, and stale demand, and a plea in the nature of a plea of estoppel, in that connection setting up that the defendant Stewart was an innocent purchaser. Defendants further set up the various resolutions adopted by the defendant company ordering the opening of a stock ledger and requiring the holders of the trustees' stock to present the same and receive renewal stock, and in the same connection allege that persons who did not obey that resolution did not become stockholders in the defendant company. That no persons other than persons appearing on the stock ledger were stockholders in the defendant company. Defendants further denied that the defendant company had ever recognized the plaintiffs or plaintiffs' ancestor as a stockholder in the company, and, in the same connection, alleged that the certificate of stock sued on by the plaintiffs was canceled many years ago, and the name of L. N. Condit stricken out and canceled on the stock register. The answer contains other allegations, in main denials of affirmative allegations contained in plaintiffs' petition hereinbefore set out. We therefore deem it unnecessary to refer to these allegations in great detail.

Plaintiffs filed their supplemental petition on March 4, 1915, setting up various exceptions, unnecessary to refer to, to the defendants' answer, and also denying all the affirmative allegations therein contained.

The defendants' first supplemental answer also consists largely of denials of the allegations made in plaintiffs' first supplemental petition, and the same may be said of plaintiffs' second supplemental petition.

Appellants' first assignment of error is as follows:

"The court erred in admitting in evidence over the objections of plaintiffs stated at the time said testimony was offered, and fully appearing in their bill of exceptions taken at its admission, all and singular the probate proceedings had, acted, and done in New Orleans, La., in the succession or admission of Urban Le Page by Lewis Le Page in 1840, and each and every portion of said probate proceedings, and especially the purported inventory returned in such succession and the order of sale of three shares of Galveston City stock herein described, and the advertisement thereof in the New Orleans Bee, and the report and confirmation of such sale, and the procès verbal connected with and growing out of, issued, done, and acted in pursuance thereof, and the report and confirmation of such sale, and the notarial act or deed read in evidence in connection therewith, dated the —— day of December, 1840, purporting and undertaking to convey to J. Chaleron three certificates of stock, Nos. 168, 169, and 170 of the Galveston City Company or Galveston City stock, and each and all of the recitals in the administration proceedings so read in evidence, and each and all of the recitals contained in said notarial act and deed, said procès verbal and said probate proceedings, which recited or purported to evidence either directly or indirectly in effect or substance that certificate B–168 had been acquired by, through, and under L. N. Condit, and that said certificate B 168, 169, and 170

had been and were therein and thereby, or contemporaneously therewith, delivered by said Le Page to said Chaleron, and each and every other portion of said probate proceedings, said proces verbal, said advertisement and said notarial act or deed, in so far as same recited or undertook to recite the transfer, sale, or other disposition of the shares herein, and especially certificate of share No. B–168, in the Galveston City Company by L. N. Condit, in so far as same might furnish proof of or any evidence from which the jury might deduce or infer the disposition by L. N. Condit to said Le Page or any one else of certificate B–168 in the Galveston City Company, or that he had ever parted with his title to, sold or surrendered possession thereof for all the grounds and objections set out in plaintiffs' bill of exception No. 1, to which reference is here made for further illustration and description of the testimony admitted and the objections made thereto."

The second assignment also complains of the admission in evidence over the objection of the appellants the instruments, documents, proceedings, acts, advertisements, and proces verbal referred to in the first assignment, for the reasons and grounds urged against the admission of each at the time offered.

Under these assignments the following propositions are urged:

(1) "The recitals contained in the notarial act or transfer and other instruments above referred to, to the effect that the three shares of stock named had been transferred by L. N. Condit to Urban Le Page were, as to the plaintiffs in this suit and their ancestor, L. N. Condit, hearsay recitals, and there being no evidence in aid of said recitals showing possession of said certificate 168 under and by reason of the transfer recited, and there being no evidence that the transferee mentioned in said recitals or any person claiming under or through him has ever claimed or asserted title to said certificate 168 under and by reason of said transfer within the past nearly 75 years, the recitals were not admissible against the plaintiffs."

(2) "Hearsay recitals purporting to evidence transfers of title when offered against persons who are not parties to and who do not claim under the instrument containing the recitals, are not admissible except after long lapse of time and then only when, in aid of the recitals, it is also shown that possession of the property transferred has been peaceably enjoyed for a long lapse of time under and by reason of the facts asserted; or if possession be not shown, then some other evidence must be offered showing a long-continued assertion of ownership to the property."

As has been before stated, plaintiff sued as the heirs of L. N. Condit to recover on certificate No. 168, out of Book B, issued by the trustees, known as the "trustees' certificates," and evidencing one share of stock in the Galveston City Company, and to compel the issuance of a renewal certificate for said trustees' certificate, and to obtain judgment for the dividends due them, and recognition of their right to a proportionate share of the property and assets of the company. The main defenses relied upon may be briefly stated as follows: (1) That the L. N. Condit to whom certificate No. 168 out of Book B was issued was not the L. N. Condit from whom the plaintiffs claim as heirs. (2) That the L. N. Condit to whom certificate No. 168 was issued transferred and disposed of said certificate during his lifetime. The allega-

tions of the petition with reference to the organization of the Galveston City Company, the issuance of the 1,000 shares of trustees' stock, the history of the company, and that up to 1909 its managing officers had recognized that there were 9 shares of trustees' stock outstanding—in fact all the material allegations of the petition, except those alleging the plaintiffs to be the heirs of the L. N. Condit to whom certificate No. 168, out of Book B, was issued, and that they as heirs of said L. N. Condit are the owners thereof, were established by the undisputed evidence.

Upon the issues made by the pleadings and raised by the evidence, the court charged the jury as follows:

"(1) If you find from the evidence that the L. N. Condit to whom was issued trustees' certificate B–168, was the L. N. Condit under whom plaintiffs claim, and that he never sold or otherwise disposed of the share evidenced by certificate B–168, then your verdict will be for the plaintiffs. But if you find from the evidence that the L. N. Condit, to whom was issued certificate B–168, was not the L. N. Condit under whom plaintiffs claim, or that he sold or otherwise disposed of the share evidenced by certificate B–168, then your verdict will be for the defendants.

"The proceedings in the estate of Le Page and the transfer thereunder are not admitted in evidence as a conveyance from L. N. Condit, but may be by you considered in connection with any and all other circumstances and facts in evidence if any, in determining whether L. N. Condit, to whom certificate B–168 was issued, did or did not dispose of same.

"(2) The burden of proof is upon the plaintiffs to show that the L. N. Condit under whom they claim was the identical or same individual to whom certificate B–168 was issued.

"(3) The burden of proof is on the defendants to show that L. N. Condit to whom certificate B–168 was issued, sold or disposed of same during his lifetime."

The verdict of the jury was in general form, as follows:

"We, the jury, find for the defendants."

The records of the Galveston City Company show without contradiction that 26 trustees' certificates out of Book B were issued to L. N. Condit on May 21, 1838, numbered 168 to 193, inclusive, and that all of these certificates were surrendered and renewal certificates issued, except certificate No. 168. Certificates No. 169 and 170 were surrendered by M. B. Menard, and renewal certificates were issued to him in lieu thereof.

On the issue of whether L. N. Condit during his lifetime sold, transferred, or otherwise disposed of his stock evidenced by certificate No. 168, the defendants, among other things, offered in evidence certified copies of the proceedings in the succession of Urban Le Page, had and done in the civil district court of the parish and city of New Orleans, under No. 98123 of the docket of said court. These proceedings were, in substance, a petition of Louis Le Page through his attorney, addressed to the judge of the probate court of said parish and city, suggesting that he desired an inventory of the property of Urban Le Page to be done be-

fore the register of wills, and an order of J. Bermudez ordering that the inventory be taken to the register of wills in the presence of all parties interested, and appointing A. D. Doriocourt and Correjolle as appraisers to value the property to be inventoried, and also an order appointing Theodore H. McCaleb, attorney, to represent the absent heirs of Urban Le Page. The first order was dated May 12, 1840, and the petition was filed on the same day. The second order was dated May 15, 1840, appointing Louis Le Page curator of the succession of Urban Le Page, reciting that notice of application for letters of curatorship had been duly advertised, and that there was no opposition; also the affidavit of Louis Le Page that he would perform the duties of curatorship of the succession of the said Urban Le Page; also the letters of curatorship, reciting the appointment as above indicated, and signed by J. Bermudez, Judge, and by W. F. C. Duplessis, register of wills, which was filed by said register on May 15, 1840; a petition of Louis Le Page that he presents the inventory in said succession, which he prays may be homologated, and also reciting that he presents the powers of the heirs which he prays may be recognized, and that letters may be granted on giving bond with such security as the court may direct. Attached to this was a statement of T. H. McCaleb, attorney for the absent heirs, stating that he had no opposition or objection to make to J. Chaleron as security for the curator. Attached to this was an order signed by J. Bermudez, Judge, as follows:

"Let the petitioner Louis Le Page receive letters of curatorship on his giving bond in the sum of $3,500 with J. Chaleron as his surety, conditioned according to law."

Dated New Orleans, the 15th of May, 1840.

In the same connection the inventory and appraisement in said succession of the estate of Urban Le Page. This recited the statement of 10 shares of the capital stock of the Louisiana Bank, 8 shares of the capital stock of the Louisiana State Bank, 40 shares of the capital stock of the New Orleans Gaslight Bank, and 7 shares in the Merchants' Insurance Company, and the following statement:

"Three shares in the Galveston City Stock of two hundred and twenty five dollars each share, and paid in full, appraised at one hundred dollars each making an aggregate sum of Three Hundred Dolls ...... $300.00."

This inventory was signed by Octave Blache, N. N. Hallaran, D. Doriocourt, Glb. Correjolles, and Louis Le Page, and was signed at the bottom by W. F. C. Duplessis, register of wills, and approved by T. H. McCaleb, and was filed May 15, 1840, before W. F. C. Duplessis, register of wills. Also the following:

"The petition of Louis Le Page, Curator, etc. Respectfully prays an order of this court for the sale of the movable effects of said succession after due advertisement by the register of wills.
"[Signed] Geo. Stranburg."

186 S.W.—26

And the following order:

"Let the sale of the movables within prayed for be made by the register of wills after the advertisements required by law for cash."

Signed by J: Bermudez, Judge.

In the same connection defendants offered another instrument in the succession of Urban Le Page, reciting: That in obedience to the order of sale above referred to and the publication and advertisement required by the act relative to publications, and advertisements required in the parish and city of New Orleans, such publication and advertisement having been made in two newspapers in the city of New Orleans, to wit, the Bulletin in the English language on the 27th, 28th, 29th and 30th of May, 1840, and on the 1st, 2d and 8th of June, 1840; and in the Bee in the French language on the 27th and 28th of May, 1840, and on the 2d of June, 1840. That Andrew Doriocourt, deputy register of wills in and for the parish and city of New Orleans, aforesaid, did at the hour of 1 o'clock p. m. repair to the Bath Saloon situated in the part of the City Exchange fronting on St. Louis street between Chartress and Royal streets and then and there, after having first announced in a loud and audible voice, exposed for sale by auction the shares of bank stock above referred to, as well as the 7 shares of Merchants' Insurance Company stock, and the following property:

"Three shares in the Galveston City stock of two hundred and twenty five dollars each adjudicated to J. Chaleron the last and highest bidder at one hundred dollars each, making an aggregate sum of three hundred dollars ...... $300.00."

In the same connection the defendant offered in evidence original issues of the New Orleans Bee containing in substance the advertisement above recited. In connection with this evidence, the defendant also offered an exemplified copy, as well as the original and photographic copy of a certain transfer or a notarial act from Louis Le Page, curator of the estate of Urban Le Page, to J. Chaleron, from the archives of the original records of Louis T. Claire, notary public. No objection was made to these papers because not properly certified or authenticated. It was conceded that if otherwise admissible that none of these papers were subject to objection because not properly authenticated, and it was also conceded that the instrument, which will hereinafter be set out in full, was the original notarial act or deed contained in the original book in which same was first made, which was produced in court. The instrument last offered is in words and figures as follows:

"United States of America. State of Louisiana,
"City of New Orleans.

"12th December, 1840. Sale of Shares by Le Page, Curator of the Estate of U. Le Page to Mr. Jas. Chaleron.

"Be it remembered that this day, the twelfth of the month of December, eighteen hundred and forty and the sixty-fifth year of the Independ-

ence of the United States of America, before me, Louis T. Claire, a notary public in and for the city and parish of New Orleans, duly commissioned and sworn, in presence of the witnesses hereinafter named and subscribed, personally appeared Mr. Louis Le Page, residing in this city, hereinafter acting as curator of the estate of Urban Le Page, deceased, appointed as such after having fulfilled all the requisites of the law by the honorable court of probates in and for the city and parish of New Orleans, on the fifteenth day of May, one thousand eight hundred and forty, who first deposed: That on the ninth day of June, eighteen hundred and forty, by virtue of and in obedience to an order of sale from the honorable court of probates in and for the parish and city of New Orleans, state of Louisiana, dated twenty-sixth May, eighteen hundred and forty, rendered in the matter of the Succession of the late Urban Le Page, deceased, and after the publication and advertisement required by law in the parish and city of New Orleans and for other purposes approved on the ninth day of March, eighteen hundred and thirty-five, Andrew D. Doriocourt, deputy register of wills in and for the parish and city of New Orleans did at the hour of 1 o'clock p. m. repair to the Bath Saloon situated in the part of the City Exchange fronting on St. Louis street between Chartress and Royal streets and then and there after having first announced in a loud and audible voice the terms and conditions hereinafter expressed and specified he did expose for public sale by auction for account of said succession the following stock, viz.: Three shares in the Galveston City stock of two hundred twenty-five dollars each and they were adjudicated to Mr. James Chaleron as the last and highest bidder at one hundred dollars each, making an aggregate sum of three hundred dollars as the whole does more fully appear from the procès verbal of sale of said Doriocourt, copy whereof duly certified is and remains hereto annexed for reference.

"Now, therefore, the said Louis Le Page declared and said that for and in consideration of the sum of three hundred dollars to him in hand well and truly paid in current money of the United States delivered out of the presence of the undersigned notary and witnesses by the said J. Chaleron a full and complete discharge and acquittance wherefrom are hereby granted, he does by these presents grant, bargain, sell, convey, transfer, abandon, and set over, under all lawful guarantee, unto the said J. Chaleron, here present and accepting for him, his heirs and assigns, the titles, interests, and claims which the said Urban Le Page, deceased, had since the fifth day of June, eighteen hundred and thirty-eight, and had until his death, in and to three certificates of stock of one share each in the city of Galveston designated by numbers one hundred and sixty-eight, one hundred and sixty-nine, and one hundred and seventy, purchased from him said Urban Le Page from and transferred to him by L. N. Bondit in presence of McCay, a notary public, on the fifth day of June, eighteen hundred and twenty-eight, the said J. Chaleron being hereby subrogated and substituted to all and singular the rights, actions, and privileges belonging to the deceased by the said Le Page in the presence of the undersigned notary and witnesses.

"Done and passed in my office at the city of New Orleans the day, month, and year aforesaid in presence of Messrs. Agustes Huard and Cyprien Courbe Ladreyere, witnesses thereto required and residing in the city who have signed with the contracting parties and me notary after the reading of the act.

"[Originally signed]
"Aug. Huard.                    Chaleron J.
"Cy. Courbe Ladreyers.      L. Le Page.
            "Louis T. Claire, Not. Pub."

As before shown, no objection was made to the proceedings and papers above referred to because not properly certified or authenticated; and it is conceded by appellants that none of the papers or proceedings were subject to such an objection. Their sole contention urged in the two propositions above set out is that the recitals contained in said papers and proceedings are hearsay, and as to them and their ancestor, L. N. Condit, inadmissible in evidence in the absence of evidence in aid of the recitals showing possession of the certificate No. 168 under the transfer from Louis Le Page, curator of the estate of Urban Le Page, to Chaleron by reason of the transfer recited, and in the absence of evidence showing that the transferee mentioned in the recitals, or any person claiming through him has ever asserted title to said certificate by reason of said transfer within the past 75 years; and that such recitals are not admissible except after long lapse of time and then only when, in aid of the recitals, it is shown that possession of the property transferred has been peaceably enjoyed for a long lapse of time; or if possession be not shown, then some other evidence showing a long-continued assertion of ownership to the property; and in support of this contention refer us to the Texas cases of Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033; Hirsch v. Patton, 49 Tex. Civ. App. 499, 108 S. W. 1015; Houston Oil Co. v. Sudduth, 171 S. W. 556; Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 738; Le Blanc v. Jackson, 161 S. W. 60; Baldwin v. Goldfrank, 88 Tex. 249, 31 S. W. 1064, and other cases; but the above are sufficient to indicate the character of cases and the legal principles relied upon by the appellants to sustain their contentions. With the principles enunciated in the cases referred to we are in hearty accord in so far as they are applied in such cases.

[1, 2] It must be remembered that the court in its charge instructed the jury that the proceedings in the estate of Le Page were not admitted in evidence as a conveyance from L. N. Condit, but might be considered by the jury in connection with any and all other circumstances and facts in evidence in determining whether L. N. Condit, to whom certificate B–168 was issued, did or did not dispose of the same. We think that under the peculiar facts of this case the court properly admitted the evidence as a circumstance with other circumstances, tending to show that Condit had in fact disposed of the certificate. The circumstances other than those afforded by the evidence objected to are, briefly, these: On May 21, 1838, 26 shares of trustees' stock, evidenced by certificates numbered from 168 to 193, inclusive, were issued to L. N. Condit. All of these certificates except No. 168, in obedience to a resolution of the governing board of the Galveston City Company, after incorporation, requiring that the trustees' certificates be surrendered and that the corporate stock

should be issued in lieu thereof, were surrendered to the corporation by persons other than Condit, and renewal certificates issued in lieu thereof. This was a circumstance tending to show that, at least, Condit parted with the title or possession, or both, of 25 shares originally held by him, including 2 of the 3 shares inventoried as a part of the estate of Urban Le Page and sold by the curator to Chaleron, and that others than himself were exercising control of same and received renewal certificates in their own name in the place of them. That during the succeeding 75 years after the issuance of said trustees' certificates neither L. N. Condit nor any one claiming under him ever surrendered certificate B-168 to the corporation, or asserted to the corporation any claim or demand for a renewal certificate, or for dividends accruing to the share of stock or any rights as a stockholder or interest in the property of the corporation, notwithstanding that by the terms of the resolution above referred to the holders of the trustees' certificates after the adoption of the resolution were denied the right to dividends and the right to vote at corporate meetings. It was also shown that at a time when Condit could have made sale of the certificates in New Orleans he was residing in that city, and was thus in a position to have had business transactions with Urban Le Page, who also resided there. These circumstances, while potent, are not in themselves sufficient to authorize a finding that Condit had transferred or otherwise disposed of certificate 168. But we think that when aided by the evidence objected to such a finding was justified. It must be remembered that at the time of the trial Condit and other original owners of the trustees' certificates, as well as the trustees and the governing board of the corporation and others connected therewith, as well, presumably, as Louis Le Page, the curator, and Chaleron, had been dead for many years, and that proof from any of these sources was impossible.

[3, 4] A share of stock in a corporation, unlike land, may be sold by parol, or pass by delivery of the certificate of stock, by which its ownership is evidenced. It is largely for this reason, we think, that a distinction exists as to the admissibility of recitals in ancient deeds as a circumstance to prove a sale of land, as in Brewer v. Cochran, supra, and the sale of personal property, such as that in controversy; and that in the instance last stated it is not necessary to show possession under the transfer recited or the assertion of a claim of title thereunder or enjoyment of the property transferred for a long lapse of time in order to render the recitals admissible as a circumstance showing a sale. Thus in Jones v. Reus, 5 Tex. Civ. App. 628, 24 S. W. 674, it is held that proof of transactions between J. and P. with reference to land certificates other than the one in suit is admissible to show the relations between the parties, and that they were in position to have had business transactions and relations between them. And it is further held that on the issue of whether J. had originally transferred the unlocated certificate to P., legal proceedings to require a surveyor to make a location are relevant and admissible, although J. and his heirs were not parties, same being admissible as showing act of domination by P.

In Anderson v. Wynne, 25 Tex. Civ. App. 440, 62 S. W. 119, it is held that the fact that P. lived in the county where the land was located for 6 or 8 years after the location of the certificate, moved away and lived 30 years, during which time he never claimed the location, are circumstances from which to infer that P. had transferred the certificate to H.

In Lochridge v. Corbett, 31 Tex. Civ. App. 676, 73 S. W. 96, it is held that an unlocated land certificate is a chattel and may be transferred and passed by delivery, and that such transfer may be shown by circumstances. It is also held in that case that a recital in an administrator's deed that his decedent had purchased a land certificate, by virtue of which the land was located, from one Young was admissible as a circumstance, and, further, that the inventory and appraisement of the estate which included such certificate was admissible as a circumstance to show claim on the part of the estate.

In Booth v. Clark, 34 Tex. Civ. App. 315, 78 S. W. 392, it is held that a recital in a transfer of a land certificate that the transferrer owned the same was admissible, not as evidence of ownership, but as a circumstance which coupled with other circumstances would tend to show that the title had passed from the original grantee of the certificate to the transferrer.

In Howard v. Russell, 75 Tex. 176, 12 S. W. 525, ancient minutes of a Masonic lodge were admitted as tending to prove the presence in the lodge room of the ancestor of the litigant, the point in issue being the identity of the person and his residence and whereabouts, it being held that the recital was admissible upon the issue of the residence and whereabouts of the party named. See, also, Dunn v. Epperson, 175 S. W. 837.

No contention is urged by appellants in the propositions presented that the evidence objected to was not sufficient to authorize a finding that Condit had sold or transferred the share of stock in question, but merely that it was, as to them, hearsay and inadmissible. We overrule that contention, as well as the contention urged in their third and fourth propositions which substantially urge the same points.

[5] By their fifth propositions appellants contend that the recitals contained in the instruments objected to were not admissible because they did not sufficiently identify the stock transferred as being the certificate in controversy.

With this contention we cannot agree. At the time of the formation of the original company and the printing and issuance of trustees' certificates the certificates described the company as "the City of Galveston." These certificates on their face describe the same as being "One share No. ——— in the City of Galveston." The transfer from the curator of Urban Le Page to J. Chaleron conveys "three certificates of stock of one share each in the City of Galveston" designated by Nos. 168, 169, and 170. The language describing the certificates transferred as being "one share each in the City of Galveston" is identical with the language in the face of the certificates as being "one share No. ——— in the City of Galveston." The transfer conveys "the title, interest, and claims which said Urban Le Page had since the 5th day of June, 1838," in the three certificates, and further says that on the back of each of said certificates "has been mentioned the present transfer." Certificates B 169 and 170, which were introduced in evidence, show that they were transferred by L. N. Condit to Urban Le Page on June 5, 1838, and further show the recited transfer from the curator of Urban Le Page to Chaleron, executed before the same notary and witnesses mentioned in said transfer. The Agents' Report and Stock Register kept by the Galveston City Company, after its incorporation under that name, shows that trustees' certificates 168, 169, and 170 out of Books A, C, D, and E, to have been issued to and accounted for by parties other than L. N. Condit, and by this process of exclusion shows that the recitals and transfer could relate only to certificates 168, 169, and 170 issued out of Book B.

The circumstances relied upon by appellants are not sufficient, in view of the facts above set out, to sustain their propositions. Briefly they are that the language of the inventory and the act of sale is "three shares of Galveston City stock of two hundred and twenty-five dollars each share, paid in full," etc., when in fact no par value was stated in certificate B–168, and that the act of sale recites that the three shares were the same purchased by Urban Le Page from "L. N. Bondit in the presence of McCay, a notary public, on the fifth day of June, eighteen hundred and *twenty*-eight," and that there was no designation of the book out of which the three shares were taken.

We think that in view of all the facts and circumstances above set out, the recital that the certificates were purchased from *Bondit* instead of *Condit*, and the date given was that of 1828 instead of 1838 were purely clerical errors, and that the jury under all the evidence could have so found, for the reason, as we have heretofore shown, that 26 trustees' certificates of the Galveston City stock had been issued to Condit and not Bondit, all of which had been accounted for except 168, and that the year 1828 passed long before the original company was organized, and for other reasons above given. The proposition is overruled.

The sixth proposition has been sufficiently disposed of by the disposition we have made of the first and second.

In their seventh proposition appellants urge that:

"It appearing that the title, if any, acquired by Urban Le Page under the recited transfer was, as against the book, legal title of plaintiffs' ancestor, a mere equitable title, and it further appearing that this mere equitable title has never been asserted against the corporation though nearly 75 years have elapsed, said equitable title, if any, shown by said transfer is a stale demand and was not such a claim or defense as could be asserted by the defendants."

The contention is further urged in argument, in effect, that the sale by Condit to Le Page of the certificate of stock conveyed to the latter only an equitable title to the stock itself as against the corporation, and, being an equitable title only, was subject to the defenses by the corporation of laches and stale demand if now presented for recognition by Le Page or those holding under him, and therefore was not such a defense as could be urged by the defendants in this suit.

[6, 7] There is respectable authority for the holding that such a conveyance confers only the equitable title to the purchaser in the absence of recognition by the corporation of the purchaser. But in all of these cases, so far as we have investigated them, the by-laws of the corporation provided that the stock could only be transferred upon the books of the corporation and by surrender of the certificate. This is the usual way provided by corporations for the transfer of stock. But at the time the 26 certificates were issued to Condit and at the time of the sale to Le Page, the company was a stock company and not a corporation, and there was no rule or by-law which required its stock to be transferred upon its books or otherwise providing the manner of sale. This being true, in the absence of any rules or regulations of the company governing the sale of its stock, the legal title, in our opinion, passed by the transfer and delivery of the certificate by the person to whom it was issued. But whether the legal or equitable title passed by the sale by Condit to Le Page can make no difference, it seems to us, for in either event appellants have now no such title to the stock of the corporation thereafter chartered as would authorize them to maintain this suit. Hughes v. Northampton, etc., Ry. Co., 210 Mass. 206, 96 N. E. 77.

The recitals in the act of sale show that Condit disposed of certificate 168 on June 5, 1838, and that thereafter neither he nor any one claiming under him asserted any title to or interest in said stock. Assuming that the recitals speak the truth, which, in view of the jury's finding we must, Condit never became a stockholder in the corporation when it was chartered on February 5, 1841, in so far as certificate B–168 was concerned. The seventh proposition is overruled, as well as

the eighth, which raises practically the same question.

The third, fourth, and fifth assignments are sufficiently disposed of by what we have said in disposing of the first and second, and with the various propositions thereunder are overruled.

[8] Under the facts of this case and in view of the court's general charge we do not think it would have been proper to have given plaintiffs' special charge No. 6, to the effect that identity of persons is presumed from identity of name. At least the failure to give the charge, if error, was harmless in view of the necessary finding of the jury under their general verdict that the L. N. Condit to whom certificate No. 168 was issued transferred or otherwise disposed of the same.

By their ninth assignment appellants complain that the verdict of the jury is contrary to the overwhelming weight and against the manifest weight and preponderance of the evidence on the issue of identity of the L. N. Condit under whom plaintiffs claim and the Condit to whom certificate 168 was issued.

[9] We shall not extend this opinion by a statement of the evidence relied upon by the defendants to prove that plaintiffs' ancestor was not the Condit to whom the certificate was issued, or that relied upon by the appellants to show that he was. We think, however, there was sufficient evidence to require the submission of this issue to the jury, but that if a finding that plaintiffs' ancestor was another and different Condit than the one to whom the certificate was issued was comprehended in the general verdict, such finding was against the manifest weight and preponderance of the evidence. But in view of our conclusion that the evidence justified the jury in its finding that Condit had sold the certificate, the sustaining of this is not cause for reversal.

Other assignments presented by appellants have been carefully examined by us, and we conclude that they do not present grounds for reversal and are overruled.

We find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.

### On Motion for Rehearing.

We have carefully considered appellants' motion for a rehearing and have concluded that it should be overruled, and it has been so ordered.

In our original opinion we stated that:

"The allegations of the petition with reference to the organization of the Galveston City Company, the issuance of the 1,000 shares of the trustees' stock, the history of the company, and that up to 1909 its managing officers had recognized that there were 9 shares of trustees' stock outstanding, in fact all the material allegations of the petition except those alleging the plain-

tiffs to be the heirs of the L. N. Condit to whom certificate No. 168 out of Book B was issued, and that they, as heirs of said L. N. Condit, are the owners thereof, were established by the undisputed evidence."

The above findings were not necessary to a decision of the questions presented upon this appeal and are for that reason withdrawn, as well as for the further reason that some of such allegations are sharply contested by the appellees by cross-assignments which we did not decide, nor did we discuss them in the opinion because we believed that our adverse ruling upon appellants' assignments of error sufficiently disposed of the case, and to this view we still adhere.

At another place in our opinion we said: "All these certificates except No. 168, in obedience to a resolution of the governing board of the Galveston City Company, after incorporation, requiring that the trustees' certificates be surrendered and that the corporate stock should be issued in lieu thereof, were surrendered," etc.

The resolution referred to was adopted by the managing board of the original company on December 31, 1838, before incorporation, and not by the company after incorporation, and we accordingly make the correction.

Overruled.